## James Lightfoot v. The People.

*Burglary: Evidence.* Upon trial for one burglary, evidence of a former one in the same house, and of defendant's connection with it, is irrelevant. Such testimony should be excluded, as likely to prejudice the jury and lead to his conviction by proof of charges he can not be expected to anticipate.

*Deposition in criminal cases: Original evidence: How witness may be contradicted.* A witness may be discredited by reading the depositions previously given by him in the same cause before the magistrate, and for this purpose they are original evidence, and need not be called to his attention unless it is desired to further cross-examine him concerning omissions or discrepancies. But a witness can not be cross-examined concerning his previous written depositions until they have been read entire to the jury in his hearing.

*Witness: Written document.* A witness can not be asked whether or not he has made a certain statement in a written document; but the document itself is to be resorted to, to determine its own contents.

*Heard April 21st and 22d.     Decided April 28th.*

Error to the Recorder's Court of Detroit.

The defendant was convicted upon an information for the crime of burglary.

The case was removed to this court by writ of error with bill of exceptions.

The facts are stated in the opinion.

*Wm. L. Stoughton,* Attorney General, for the People.

1. A witness stated that the defendant admitted, at the time of the commission of the offense, that he was the person who broke in the same premises in the previous May.

This was a part of the *res gestæ*, and therefore admissible. 1 *Greenl. Ev.* 108.

Evidence may be admissible for one purpose though not for another.— 5 *Serg. and Rawle*, 117; 10 *Id.* 14; 1 *Phil. on Ev.* 739.

The burglary in May was not under consideration, but the identity of the defendant and his knowledge of the premises and his antecedent preparations, were proper subjects of inquiry.— *Whart. Am. Crim. L.* § 828; 3 *Seld.* 445; 2 *Cush.* 590.

The fact that the breaking in May was a distinct felony, does not necessarily render the evidence incompetent.—*Bish. Cr. Proceed.* § 493 *and note* 2; 16 *N. Y.* 344; 4 *Gratt.* 534; 21 *Pick.* 515.

It is not necessary that the evidence should bear directly upon the issue. It is admissible if it tends to prove the issue, or constitutes a link in the chain of proof.— 1 *Greenl. Ev.* § 51, *and cases there cited;* 15 *Mich.* 397.

2. Upon the defense the counsel for the prisoner offered in evidence the minutes of the testimony taken by the clerk of the Police Court upon the preliminary examination, and returned to the Recorder's Court for the purpose of contradiction. This evidence was objected to by the counsel for the people, and the court rejected all of such depositions "excepting the testimony of two witnesses, Mary Cassidy and Hortense Cassidy, concerning the facts to which their attention was particularly called on the cross-examination."

Before the credit of a witness can be impeached by proof of inconsistent statements, whether written or verbal, a foundation must be laid by questioning him as to his former statements.— 1 *Greenl. Ev.* § 462; 1 *Walk. Ch.* 48; 2 *Mich.* 415; 2 *Phil. Ev.* 958; 19 *N. Y.* 549; 2 *Broad. and Bing.* 313 – 314.

If such statement is in writing and in existence, it must be produced and shown to the witness.— 1 *Greenl. Ev.* §

463; 2 *Phil. Ev.* 962 – 967; *The Queen's case*, 2 *B. and B.* 286; 8 *Wend.* 395 – 398; 8 *C. and P.* 26, 726; 7 *Id.* 676.

And in case of depositions taken before an examining magistrate, it must be shown that they are the identical papers without alteration.— 8 *Wend.* 599; *Comp. L.* § 5992; *Sess. L.* 1863, *p.* 307.

The record shows that the depositions were not shown to the witnesses, and that no proof was offered in relation to them. They were not therefore admissible for any purpose.

*H. M. & W. E. Cheever*, for defendant.

1. It is not competent for the prosecution to place before the jury facts even tending to prove another distinct offense, so as thereby to raise a presumption that the prisoner is guilty of the offense charged in the information.— *Foster*, 245.

It has been held on indictments for burglary and for larceny that evidence of the commission of previous crimes was inadmissible.— *Birdeye's Case*, 4 *C. and C.* 386; *Vandercomb's Case*, 2 *Leach*, 708.

The only exceptions to this is evidence of other transactions, which, by reason of the time of their commission, seem to be a part of the offense charged, or are so connected that its admissibility can not be avoided, or where the guilty intent or knowledge of the prisoner is material to the issue.

2. The depositions of the two witnesses, Mary and Hortense Cassidy, were admissible.

By *Section 2 of the Police Court Act*, the Police Justice is given the same power in the examination of criminal cases, in this city, as is possessed by Justices of the Peace outside the city, and he is subject to the same laws.— *Laws of* 1850, *p.* 365, § 2.

Justices of the peace, in the examination of criminal cases, not cognizable by them, are governed by the following provision:

"The evidence given by the several witnesses examined shall be reduced to writing by the magistrate, or under his direction, and shall be signed by the witnesses respectively." *Comp. L.* § 5992; *Laws* of 1863, *p.* 307.

In this case, the evidence of these two witnesses was "reduced to writing" by the Police Court clerk, acting "under the direction" of the Police Justice. The statute does not require the evidence to be read over to the witnesses before signing. They signed it, and it was taken in exact conformity to the statute.

The depositions were regularly taken, and produced from the legal custodian to whom it was required by law to be returned.

It is admissible to contradict or to impeach the witnesses against the prisoner without reading to them the entire deposition.— 3 *State Trials,* 131; *Hawks, P. C.* 62, *Chap.* 46, § 9; 10 *Gratt.* (*Va.*) 658; 2 *Smedes and Marsh.* 10 *Miss.* 54; *Thacher's Crim. cases,* 82; 19 *Wend.* 569.

CAMPBELL J.

Defendant was indicted for burglary. Upon the trial, one of the witnesses, in giving a narrative of what took place at the time, stated that defendant said he was the man who had broken into the house in the previous May.

The witness was then asked whether the house was broken into in May, and was allowed under objection to answer the question, and describe the breaking.

This was improperly allowed. What the witness said about defendant's statement concerning the May burglary would not have been admissible as a distinct piece of evidence. It only got into the case as part of a narrative of what took place during the burglary for which the prisoner was on trial, and was not objected to for that reason. But the further testimony was independent evidence, having no tendency to prove anything but the earlier offense, for

which defendant was not on trial. There was no connection between the two crimes, and proving one had no tendency to prove the other. It is very manifest that the admission of such testimony must prejudice the jury strongly against the prisoner, while he can not be expected to have made any preparation to meet such irrelevant charges. The rule of exclusion is even more important in criminal than in civil cases, because the consequences of its violation are more serious, and the danger of conviction on irrelevant matter is more direct.— 2 *Russ. Cr.* 772; *Foster*, 245; *Roscoe Cr. Ev.* 81; *People v. Jenness*, 5 *Mich.* 305.

The defense also offered to show by the depositions returned upon the preliminary examination that two witnesses sworn on the trial had testified differently in material respects there from what they did on the trial. The court refused to allow any part of the depositions to be read in contradiction, except such portions as the witnesses had been questioned on upon cross-examination had, and as to which they had been asked whether they had not made such statements.

The rule applied by the Recorder was the same which is adopted where the witness is sought to be impeached by proof of contradictory oral statements. It is the rule in this state, as in most other places, that, where a witness is to be impeached upon contradictory verbal statements, the inquiry must first be made of the witness himself whether he has previously made such statements, with convenient certainty of time, place and circumstance.— *Sawyer v. Sawyer*, *Walker Ch.* 48; *Smith v. People*, 2 *Mich.* 415. But where the statements relied upon for contradiction are not verbal, the rule is otherwise.

In the *Queen's Case*, 2 *Brod. & Bing.* 284, this subject was somewhat carefully investigated, and it was stated by the judges that it was not competent to ask a witness whether he had not made certain statements in a letter, but that, when he had admitted the letter, the letter itself

was to be read in evidence; and the Chief Justice said, "*one of the reasons for the rule requiring the production of written instruments is in order that the court may be possessed of the whole;*" and he further remarks, that "the whole, if produced, may have an effect very different from that which might be produced by a statement of a part."

And in the same case it was held that a witness could not be cross-examined concerning such statements without first ascertaining whether they were verbal or written, and if written they must be shown by the writing alone.

It is a general rule that verbal admissions are only receivable of facts provable by parol. This is the ground upon which it has been held that a witness can not be inquired of as to whether or not he has made particular written statements. — *Bellinger v. People*, 8 *Wend.* 595; *Newcomb v. Griswold*, 24 *N. Y.* 298. And this rule applies with much more force to depositions than to private writings, for they stand as solemn testimony, and in many cases are receivable as original proof where the witness is not attainable. His oath on one occasion is as solemn and binding as on any other; and if his sworn declarations are inconsistent, they will, unless some good explanation is given, destroy the credit of the witness to a greater or less extent. They are not like verbal conversations which may easily be perverted by treacherous memories, but stand without danger of change or misunderstanding through lapse of time. Where a witness has once been examined before a magistrate, the law presumes that the depositions contain all of his statements. It presumes further that those statements of witnesses were the only ground on which the prisoner was regarded as worthy of being charged as culpable, and put upon his trial for the offense alleged. They are required to be returned into the trial court for the express purpose of enabling the judge and jury to see whether the witnesses are consistent in their statements on the trial and

on the examination, and thereby to determine how far they are entitled to credit.— *Lambe's Case*, 2 *Leach*, *Case No.* 236; 2 *Starkie Ev.* 276, 279; 2 *Phill. Ev.* 238 (*4th Am. Ed.*); *Rex v. Coventry*, 7 *C. & P.* 668; *Rex v. Grady*, Id. 668. The deposition is presumptively the best evidence of all that the witness said before the justice; and to require him to be cross-examined upon the facts would lead to very strange results, *first*, by allowing secondary evidence in lieu of primary, and *second*, by enabling the witness, by admitting the statements propounded to him, to shut out the depositions altogether. For the rule is clear that where a witness admits the statement alleged, no other proof of his having made it is allowable.

It seems a very useless ceremony to ask a witness whether a deposition contains a statement or not, when he is at liberty, according to all of the authorities, to see the paper on which he is cross-examined, or to hear it read. It would require no great stretch of candor to admit what it would be useless to deny. And, inasmuch as the candor and consistency of a witness can usually be better tested by a comparison of all that he has said, than by selecting detached passages, the effect of such a mode of examination as is claimed by the prosecution would be to prevent the jury from ever finding out the precise history given by the witness on the preliminary examination. No such imperfect method of comparison was ever designed.

On the contrary the deposition relied on to establish a contradiction by the witness is original evidence for the party against whom he is sworn, and should be read in the case as independent testimony. The only occasion for bringing it to the attention of the witness at all, is where the party impeaching him desires to follow up the production, and reading in evidence of the deposition by a further cross-examination concerning the discrepancies and their causes. It would be unfair to cross-examine until the jury are informed of the precise contents of the deposition,

and thus warned against assuming contradictions which do
not really exist, and it would also be unfair to the witness
because he may have explanations which would not occur
to him until his memory had been refreshed by hearing the
paper read.    But, except the case of *Stephens v. The Peo-
ple*, 19 *N. Y.* 549, where it is evident the point was care-
lessly decided, we have been referred to no well grounded
line of authority which furnishes any support to the idea
that the entire deposition should not in all cases be read
to the jury, and left to their consideration.    In *Clapp v.
Wilson*, 5 *Denio*, 285, the whole subject was very carefully
considered, and it was held distinctly that the deposition
was independent evidence and need not be introduced by
way of cross-examination.    The case of *Stephens v. The
People*, does not allude to this decision, and contains no
reasoning whatever on this point, and from the manner in
which the various judges are said to have expressed them-
selves on other questions, it is extremely doubtful whether
this question was passed upon at all by a majority of the
court.    It was of course decided in fact, but in their dif-
ferences on other points, this seems to have excited no
attention.    They certainly would not have disposed so un-
ceremoniously of the case of *Clapp v. Wilson*, had they
turned their attention to it.    The subsequent case of *New-
comb v. Griswold*, 24 *N. Y.* 298, re-affirms the doctrine of
the earlier cases, and recognizes the rule that every writing
must speak for itself, as well as the further rule before
referred to that until a paper has been read it can not be
made the basis of cross-examination at all.    In *Williams
v. Chapman*, 7 *Georgia*, 467, it is also decided that the rule
requiring a foundation for impeachment to be laid by in-
terrogating the witness does not apply where it is done by
means of his former deposition.    In *Lamalere v. Caze*, 1
*Wash. C. C.* 413, the admissibility of depositions for that
purpose is recognized.    And it is not disputed that in the
New England States the same practice is followed, although

less weight is supposed to be due to their usage, because they are not so rigid in other cases of impeachment as we are. But our entire practice is based upon the English rule, and upon that there is no possible room for dispute.

It is said by *Hawkins* that since Lord *Stafford's* case it has been admitted that a defendant may put in the depositions to show that the witness has contradicted himself.— *Hawkins Pl. Cr. book* 2, *ch.* 46, § 22. *Starkie* and *Phillipps* also lay it down that depositions may be read to discredit, but not to corroborate a witness.—1 *Starkie,* 423; 2 *Phil.* 238, 962, 968. And it is said on the authority of *Reg. v. Holden,* 8 *C. and P.* 606, and *Reg. v. Shellard,* 9 *Id.* 277, that it is improper to ask a witness whether he has always told the same story, without qualifying the question by adding "except when you were before the magistrate," "or the coroner." The same doctrine as to the use of depositions is laid down in 2 *Russ. Cr.* 896, and in *Roscoe's Cr. Ev.* 74. And the courts have, on several occasions, commented on the importance of having very full and complete returns of the evidence before the magistrate for the express purpose of ascertaining how far the witnesses have been consistent.— *Simons' case,* 6 *C. and P.* 540; *Fuller's case,* 7 *C. and P.* 269; *Rex v. Thomas,* 7 *C. and P.* 817; *Rex v. Grady,* 7 *C. and P.* 650; *Rex v. Coventry,* 7 *C. and P.* 667. The case of *Reg. v. Christopher,* 2 *C. and K.* 994, contains a clear statement of the reasons why a deposition should be primary evidence, and points out the distinction between such minutes required by statute, and those notes of evidence made by judges or others for their own convenience, and not required by law to be preserved. Baron *Alderson* also refers to a note to *Jeans v. Wheedon,* 2 *Moo. and Rob.* 486, as valuable on this subject. To the same effect is *Robinson v. Vaughton,* 8 *C. and P.* 252.

In *Reg. v. Taylor,* 8 *C. and P.* 726, and *Reg. v. Ford,* 4 *L. and Eq.* 576, it was held that in all cases the deposition must be read before a witness could be cross-examined

on it; and the rules adopted by the judges after the passage of the *Prisoner's Counsel Act*, which are admitted to have been restrictive instead of in relaxation of the former practice, are very explicit in requiring the depositions to be introduced and read in evidence, before the witness can be asked any question whatever concerning his statements before the magistrate.— 7 *C. and P.* 676; *Reg. v. Thomas*, 7 *C. and P.* 817.

In *Rex v. Oldroyd, Russ. and Ry. C. Ca.* 88, the judge on the trial, upon his own motion, and without any cross-examination, having perceived a material discrepancy between the testimony of a witness and her previous deposition, directed the deposition to be read by way of impeachment. The question of its propriety having been reserved for consideration by the twelve judges, they agreed unanimously that the practice was correct.

The following American cases are also pertinent:— *Thayer v. Gallup*, 13 *Wis.* 539; *Hughes v. Wilkinson*, 35 *Ala.* 453; *Downer v. Dana*, 19 *Vt.* 338; *Russell v. Coffin*, 8 *Pick.* 143.

We think that justice requires the allowance of such a course. If a party desires to cross-examine the witness on the subject of his former statements, he should read the entire deposition in evidence before doing so. If he does not desire to cross-examine on that topic, it is sufficient to read it at any time. And if the prosecution think fit to examine the witness, so as to remove, if possible, any prejudice which is susceptible of removal, that is proper testimony in reply.

It is unfortunately true that magistrates are not as careful as they should be to make the depositions complete. But this does not change their character as legal returns, and any proper explanation is always attainable. But no rule should be permitted which will prevent the jury from having before them, if the prisoner requires it, the deposition itself as the best and only legitimate proof of its own contents.

The Recorder's Court should be directed to grant a new trial.

COOLEY CH. J. concurred.

CHRISTIANCY J. did not sit.

GRAVES J.

As my brethren have formed an opinion in this case very different from that which I entertain, I shall venture to present some of the views by which I am governed. In doing this, however, I can not be unaware that any deliberate determination by them will very justly outweigh any opposing ideas on my part, however firmly held.

There are but two points in the case, and both of them arise upon the rulings of the Recorder respecting the admission of evidence.

Mary Cassidy was sworn on the part of the people, and testified that she was in the house at the time of the burglarious entry, that the defendant was the person who entered, and that upon some remark being made by her sister as to the defendant's being the man who broke into the house on a previous occasion, the defendant stated that he was the man who broke in, in May. The counsel for the people then asked this question: "State whether your house was broken in during the previous May?"

The defendant's counsel objected to the question as immaterial and irrelevant, but the court overruled the objection, and the witness answered that her house had been broken into the previous May, that she saw on that occasion the person breaking when he was standing upon the top of the bay window, but could not tell whether the defendant was that person or not." This presents the first question, and in the argument from the bar for the defendant, the objection to the testimony was placed upon the ground that evidence of a distinct or independent crime or transaction was inadmissible in a case of this description.

It is believed that this proposition can not be maintained in the broad terms in which it is laid down. No objection was made to the proof of the defendant's statement at the house while in the very act, that he was the man who broke in, in May, nor could any be sustained if made. Up to this point the testimony tended to show that the defendant was the party who had then entered, and also that he declared that he had entered in the May previous. If in point of fact an entry was made the May previous, it was corroborative of the prisoner's statement as to his having been before at the very place, and that circumstance taken in connection with the declaration, must have had a tendency to show his acquaintance with the premises.

Of course, it will not be said that it was already proved that he was in the building, and that therefore no evidence of former acquaintance with the premises was requisite; since the whole matter was for the jury, and the precise view they would take of the evidence could not be decided in advance. They were to find whether any burglarious entry, as charged in the information, was effected; and if there was, then whether the defendant was the burglar. And certainly any testimony, whether strong or weak, having any tendency to show that the defendant had more or less acquaintance with the premises a short time before the entry charged, would be pertinent so long as the identity of the defendant with the entry charged should remain a part of the people's case. The source from whence the testimony came was of no moment in the given instance, as the objection made was aimed only at the principle. Neither in my judgment could it make any difference that the knowledge as to the premises was obtained through criminal explorations instead of honest ones. If the people had been able to show that some months before the entry charged, the defendant had worked as a mechanic for a day or two in repairing or adjusting the particular window through which the entry was effected, it would have been permitted

without a question. I confess my inability to see how the *admission* of the testimony can be made dependent on the purpose of the party in surveying the premises. Whether the knowledge is gained through criminal or honest practices is, it seems to me, beside the question, since the object is to show the *knowledge* and not the *method* of acquiring it.

The circumstance that the testimony would likewise tend to prove another offense ought not to occasion its exclusion as irrelevant, if actually relevant upon another ground and for another purpose. The people ought not to be debarred the privilege of showing that the prisoner was acquainted with the premises simply because he made that acquaintance in a criminal attempt.

It appears to me that the fact sought to be elicited as to the former entry, when connected with the statement imputed to the prisoner, though possessing but little weight, had a direct bearing upon the issue, and was properly admitted. — *The People v. Jenness*, 5 *Mich.* 305; *White v. Bailey*, 10 *Id.* 155; *Beaubien v. Cicott*, 12 *Id.* 459; 1 *Greenl. Ev.* § 49; *Cow. & Hill's notes vol.* 1, *note* 330.

The second question grows out of the rejection of certain minutes of testimony taken by the committing magistrate.

The attorney for the people having examined Mary and Hortense Cassidy, they were severally cross-examined for the defense.

Upon her cross-examination, the witness Mary was inquired of as to how she testified on the preliminary examination in regard to several matters, and she proceeded to state according to her recollection. Among other things she stated that the deposition taken at the police court was not read over to her before signing.

The same course was pursued with the witness Hortense, and attended by the same result.

It does not appear that the depositions or examinations made before the committing magistrate were produced or shown to either witness on cross-examination, or read to either wholly or in part.

The attorney for the people having rested, the prisoner's counsel put upon the stand the clerk of the Police Court, who testified that he took the testimony of the witnesses in writing as required by law; that the examination in chief, but not the cross-examination was signed by the witnesses respectively; that Hortense and Mary were sworn and testified and signed their depositions in chief, though he could not say whether they were read over to them before the signing; that the depositions in Court were those taken.

The witness further stated that Mary testified on the examination that the prisoner locked her up in the room with the servant.

One Madison J. Lightfoot, another witness for the defense, also stated that the witness, Mary, testified before the magistrate that the prisoner, on being asked to leave the house, replied, "Do you suppose I'll leave now, when I've been all night getting in? It's now 4 o'clock."

The prisoner's counsel then offered in evidence the "minutes" of testimony referred to by the clerk which had been taken and returned, for the purpose of showing that the witnesses, Mary and Hortense, had testified in many material points upon said examination in a different manner than upon the trial, and to this the attorney for the people objected. The court decided that so much of the depositions of Mary and Hortense as concerned the facts to which their attention had been particularly called on cross-examination should be admitted, but that the residue should be excluded. This ruling, thus excluding so much of such depositions or minutes as had not been particularly referred to in the cross-examination of Mary and Hortense, is claimed to have been erroneous. The broad ground is taken that these minutes prepared, kept, and authenticated as represented, were admissible in evidence in order to impeach the witnesses, Mary and Hortense, and where there had been no cross-examination upon the minutes themselves, and when such minutes had neither been

read nor exhibited to the witnesses on the trial. All the minutes of the testimony of each witness were offered in evidence, when it affirmatively appeared that the cross-examination in neither case had been signed by the witnesses, and it was not shown that any portion of either deposition had been read to or by them, and the accuracy of the minutes had not been established. The cross-examinations before the magistrate were as much a part of the depositions as the examination in chief, and the statute expressly provides that the *evidence*, not a part of it, given by the several witnesses examined, shall be reduced to writing by the magistrate or under his direction, and shall be *signed* by the witnesses respectively.— 2 *Comp. L. p.* 1576, § 5992.

This, and most of the provisions of the chapter for the arrest and examination of offenders, were borrowed from New York.

In the *People v. Restell*, 3 *Hill*, 289, the depositions of one Mrs. Purdy, who had died after examination and before trial, were allowed to be put in evidence on the trial, on the part of the people, and the Supreme Court, by *Bronson*, Judge, held, that if the depositions were taken pursuant to law and had suffered no detriment, they were admissible on the trial — the witness being dead.

The foregoing provision, and another which we have also copied, were quoted at length, and it was held that the depositions were improperly admitted, since it appeared that they were not taken pursuant to law. In that case the cross-examination had not been taken in writing. It is to be observed that the right to give the depositions in evidence was then put upon the ground that the witness had died before the trial.

Judge *Bronson*, in alluding to the manner in which such examinations should be conducted in order to make the depositions evidence, said: "The answer of the witness should be on oath. He should be first sworn and then examined, instead of taking the examination first and then

16 MICH.— 2I.

swearing him to the truth of the statement, and the deposition should be taken as nearly as possible in the words used by the witness. When the direct examination is closed the defendant should be allowed to cross - examine at large, and the answers should be carefully set down by the magistrate."

These observations have a vital application to this case. Why observe all this care in taking down as nearly as possible in the words of the witness the answers on the direct and cross - examination, and why require the whole to be signed by the witness as is done by the statute, if the magistrate or his clerk may make evidence for the case by returning minutes, which were not read to or by the witness, nor signed by him, nor proved in any way to be accurate.

The admission of such testimony could not be placed upon the ground that the examinations were by law made the foundation of the subsequent proceedings and required accordingly to be sent to the Recorder's Court, for the sufficient reason among others that they were not in substantial compliance with the letter or spirit of the law under which they purported to have been made, and were not even substantiated by the oath of the clerk who made them.

The proposed proof was open to another serious objection. In addition to the infirmities in the proceeding already suggested, the minutes, or depositions, or examinations, as they have been indifferently called, were neither shown to the witnesses nor read to or by them on the trial, nor was there any cross - examination directed to the contents of the papers. The evidence was offered under the familiar rule that the credit of a witness may be impeached by *proof*, not rumor or hearsay, that he has *made statements* out of court *contrary to what he has testified at the trial*. Upon this subject Mr. Greenleaf says: "*before* this can be done it is generally held necessary, in the case

of *verbal* statement, first to ask him as to the time, place and person involved in the supposed contradiction. It is not enough to ask him the general question, whether he has ever said so and so, nor whether he has always told the same story, because it may *frequently* happen that upon the general question he may not remember whether he has so said; whereas, when his attention is challenged to particular circumstances and occasions, he may recollect and explain what he has formerly said. This course of proceeding is considered indispensable from a sense of justice to the witness; for, as the direct tendency of the evidence is to impeach his veracity, *common justice* requires that by first calling his attention to the subject he should have an opportunity to recollect the facts, and if necessary, to correct the statements already given, as well as by a re-examination to explain the nature, circumstances, meaning and design of what he is proved elsewhere to have said; and this rule is extended, not only to contradictory statements by the witness, but to other declarations, and to acts done by him, through the medium of verbal communications or correspondence, which are offered with the view either to contradict his testimony in chief, or to prove him a corrupt witness himself or to have been guilty of attempting to corrupt others."

A similar principle prevails in cross-examining a witness as to the contents of a letter or other paper written by him.

"The counsel will not be permitted to represent, in the statement of a question, the contents of a letter, and to ask the witness whether he wrote a letter to any person with such contents, or contents to the like effect, without having first shown to the witness that letter, and his admitting that he wrote it. For the contents of every written paper according to the ordinary and well established rules of evidence are to be proved by the paper itself, and by that alone, if it is in existence."—1 *Greenleaf's Ev.* § § 462, 463.

This citation is sufficient to exhibit the points involved. The essence of the rule is, that a sense of justice to the witness requires that he should be first interrogated upon the subject matter, whether written or verbal, involving the supposed contradiction, where it would be possible to make any correction or explanation; and that where the subject matter is in writing the rule requiring such interrogation is subject to the other rule that the paper is the best evidence of its contents. Hence, where the subject matter is in writing, a compliance with the first rule can only be secured by basing the inquiry upon the writing, and the latter must then become the best evidence of what it states.

The general rule was recognized in this court in 1852, in *Smith v. The People*, 2 *Mich.* 415, and it has been the received doctrine in the Circuit Courts for more than twenty years.

The principle must be the same whether the collateral statement be verbal or in writing, unless the circumstances show that a correction or explanation would be impossible.

Justice to the witness must be equally essential in the one case as in the other, and this is the foundation of the rule.

Was this a case where explanation or correction must have been impossible?

Was it one requiring a denial of opportunity.

The humanity of the law ought to be as conspicuous in its tenderness to witnesses as to those charged as criminal offenders, and neither should be subjected to unnecessary rigor.

In the immense majority of cases, the preliminary examinations on criminal accusations are conducted in a summary manner, with little regard to form or technical accuracy. However exhaustive the inquiry, the examinations as written, furnish a most inadequate and uncertain record of the testimony as delivered.

And it is according to the experience of all tribunals who have had to do with the testimony so taken and preserved, that such examinations or minutes are but

the imperfect translations of the language of witnesses into that of the writer, whether clerk or magistrate, and that the elements of their fallibility will depend upon a great variety of circumstances.

The observations of Lord *Langdale* upon an affidavit cited in a note by Mr. Geenleaf have a direct and important bearing upon the character of these examinations, and present very clearly some of the grounds and qualities of uncertainty they possess.   He says:  "I do not think that the veracity or even the accuracy of an ignorant and illiterate person is to be conclusively tested by comparing an affidavit, which he has made, with his testimony given upon an oral examination in open court.   We have too much experience of the great infirmity of affidavit evidence. When the witness is illiterate and ignorant, the language presented to the court is not his; it is and must be the language of the person who prepares the affidavit; and it may be, and too often is, the expression of that person's erroneous inference as to the meaning of the language used by the witness himself; and however carefully the affidavit may be read over to the witness, he may not understand what is said in language so different from that which he is accustomed to use.   Having expressed his meaning in his own language, and finding it translated by a person on whom he relies into language not his own, and which he does not perfectly understand, he is too apt to acquiesce; and testimony not intended by him is brought before the court as his.   It is further to be observed that witnesses, and particularly ignorant and illiterate witnesses must always be liable to give imperfect or erroneous evidence, even when orally examined in open court.   The novelty of the situation, the agitation and hurry which accompanies it, the cajolery or intimidation to which the witnesses may be subjected, the want of questions calculated to excite those recollections, which might clear up every difficulty, and the confusion occasioned by cross-examination as it is too often

conducted, may give rise to important errors and omissions; and the truth is to be elicited, not by giving equal weight to every word the witness may have uttered, but by considering all the words with reference to the particular occasion of saying them, and to the personal demeanor and deportment of the witness during the examination; all the discrepancies which occur, and all that the witness says in respect to them are to be carefully attended to, and the result, according to the special circumstances of each case, may be, either that the testimony must be altogether rejected on the ground that the witness has said that which is untrue, either wilfully or under self delusion, so strong as to invalidate all that he has said, or else the result must be, that the testimony must, as to the main purpose, be admitted, notwithstanding discrepancies which may have arisen from innocent mistake, extending to collateral matters, but perhaps not affecting the main question in any important degree.—1 *Greenl. Ev.* § 462.

The minutes in question were open to all the infirmities suggested by Lord *Langdale,* and a "sense of justice to the witnesses" required the Recorder to exclude the testimony in the absence of the opportunity, for correction and explanation which the genius of the rule demands.— *Newcomb v. Griswold,* 24 *N. Y.* 298; *Stephens v. The People,* 19 *Id.* 549; *Bellinger v. The People,* 8 *Wend.* 595; *Morrison v. Myers,* 11 *Iowa,* 538; *Samuels v. Griffith,* 13 *Id.* 103; *Baker v. Joseph,* 16 *Cal.* 173; *Mendenhall v. Banks,* 16 *Ind.* 284; *Unis v. Charlton's Admr.* 12 *Grat.* 484; *The Queen v. Ford,* 4 *E. L. and E.* 576; 2 *Phill. Ev. Edwards Ed.* 968; *Matthew v. Dare,* 20 *Md.* 248; *Bobo v. Bryson,* 21 *Ark.* 387; *Strunk v. Ochiltree,* 15 *Iowa,* 179; *Wright v. Campsty,* 41 *Penn. State R.* 102; *Owen v. Rynerson,* 17 *Ind.* 620; *Scott v. King,* 7 *Minn.* 494; *The Queen's case,* 2 *Brod. and Bing.* 289, 290; 1 *Greenl. Ev.* § 465.

I think that the rulings of the court below were correct, and that the judgment ought to be affirmed.