THOMAS TOOHEY v. CHARLES H. PLUMMER.

[See 65 Mich. 688.]

*Impeachment of witness—Stenographer's minutes taken on former trial.*

1. On the cross-examination of a witness, after reading his testimony given on a former trial as printed in the record used in the Supreme Court, he may be asked if he did not so testify, but such record is inadmissible as impeaching evidence.[1]

2. A stenographer may use his minutes taken on a former trial, for the purpose of refreshing his recollection as to what a witness testified to; but such minutes are not original evidence of such fact, and have no more force for such purpose than minutes taken by any other person during the progress of the trial.

Error to Bay. (Green, J.) Argued February 14, 1888. Decided April 13, 1888.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion, and in the former opinion found in 65 Mich. 688.

*T. A. E. & J. C. Weadock,* for appellant.

*A. McDonell,* for plaintiff.

LONG, J. This cause was in this Court at the April term, 1887, on writ of error brought by the plaintiff. Judgment of the court below was reversed, and the case remanded for new trial, and is reported in 65 Mich. 688 (32 N. W. Rep. 897).

The cause was again tried in the circuit court for Bay county, and plaintiff prevailed. Defendant now brings the case here on writ of error.

---

[1] See *Dunbar v. McGill, ante,* 297.

While the record now presented is much more voluminous, setting out the testimony more in detail, substantially the same state of facts is shown as contained in the former record.

The testimony being closed, the court very clearly presented the case to the jury, leaving all questions of disputed facts in the case for their consideration and determination, and very fully and correctly stated all questions of law involved in the case to them.

Defendant now claims that under the facts and the law, judgment should have been entered for the defendant, and upon this claim bases his first assignment of error.

We do not agree with the counsel. The only important question in the case was whether the sale had been so far completed as to pass the title to these logs. This was a question of fact for the jury, under all the circumstances of the case; and, under a very correct and clear statement of the law from the court, the jury found the fact of a completed sale, and we think, from the surrounding circumstances, very properly.[1]

This must dispose of the case unless there was error in the admission of testimony, on the trial, under defendant's objection. The principal question on this part of the case, and the one most strenuously urged by defendant's counsel upon the argument of the case here, is under the eleventh assignment of error; that the court erred in permitting plaintiff's counsel to read in evidence that portion of defendant's testimony printed in the record of this cause when in this Court at the April term, 1887.

While on the witness stand defendant was asked:

"*Q.* Do you remember the testimony you gave on the last trial ?
"*A.* I don't remember it distinctly.

_____

[1] For a statement of such circumstances see former opinion, 65 Mich. 688

" *Q.* I will read it to you, and I will ask you if you gave any such testimony.

" *Defendant's Counsel.* I insist that all the testimony must be read.

" *Q.* Did you give this testimony—

" *Defendant's Counsel.* I insist that you must begin at the beginning of his testimony, and read it all through, before you can question him about it at all, when objection is made."

The testimony was then read to the witness so far as it appeared in the printed record above referred to. When the reading was finished, defendant's counsel objected that all defendant's testimony had not been read, and that it was not all printed in the record read from.

" *The Court.* All on that subject?

" *Defendant's Counsel.* That I cannot say.

" *The Court.* You would be entitled to read any other testimony.

" *Defendant's Counsel.* That I cannot do, because Mr. Hartingh reported that case, and he is not here. I presume he has read all there is in this printed record; but what I object to is, all the testimony is not here.

" *The Court.* He may answer whether he gave that testimony or not.

" *A.* I think all that was given; that, as given at that time, was my memory of it.

" *Q.* And your statement to-day, if it differs from that, would be incorrect?

" *A.* I am attempting to state it as I understand it."

Defendant's counsel now contend that the minutes of the former trial were incomplete, and not established by any proof; that the stenographer who took them was not called to establish their correctness; and that, the stenographer being away, defendant could not show whether all the testimony had been read or not; and that common fairness required that before he could be questioned about his former testimony when it had been written it should be first read to him entire. In support of this proposition counsel cite: *Lightfoot v. People,* 16 Mich. 507; *Hamilton v. People,* 29

Id. 198; *Misner v. Darling*, 44 Id. 439 (7 N. W. Rep. 77); *Seligman v. Ten Eyck's Estate*, 53 Id. 289 (18 N. W. Rep. 818).

These cases do not support the doctrine contended for by defendant's counsel.  In *Lightfoot v. People, supra*, it was held by this Court that a deposition taken before the magistrate is original evidence in the case, and may be read by the party against whom he is sworn, and should be read in the case as independent testimony, and the only occasion for bringing it to the attention of the witness at all is where the party impeaching him desires to follow up the production and reading in evidence of the deposition by a further cross-examination concerning the discrepancies and their causes.    It would be unfair to cross-examine, until the jury are informed of the precise contents of the deposition, and thus warned against assuming contradictions which do not really exist, and would also be unfair to the witness, because he may have explanations which would not occur to him until his memory had been refreshed by hearing the paper read.    The deposition is presumptively the best evidence of all the witness said before the justice.

In *Hamilton v. People, supra*, one Fuller, upon his cross-examination, was asked if he had not previously made a written statement then shown to him, and he swore he did not remember it, but admitted it had his signature.    But the court refused to allow any portion of the paper to be read except a few detached sentences, as it reflected upon the private character of others, and this Court held:

" The party attempting to attack a witness as false, and to show his falsehood by his self-contradictions, cannot be deprived of a right essential to his own safety by any considerations of delicacy to others which will stifle the truth ; and inasmuch as the impeachment here was by a written statement signed by the witness, the practice would not permit him to be asked whether he made particular statements in it, but when identified the writing must be put in as a whole, and must speak for itself."

In *Misner v. Darling, supra*, Mr. Justice COOLEY, delivering the opinion of the Court, said:

"When this case was first brought to trial in the court below, the plaintiff put in his evidence, and rested. The defendant then took the stand as a witness, and gave evidence; but before he had concluded the plaintiff was allowed to amend his bill of particulars, and the case was continued. When it was brought to trial again it was taken up anew, and the plaintiff, after putting in some documentary evidence, called the official stenographer, and inquired of him if he had the notes of defendant's testimony taken on the former trial. Being answered in the affirmative, the plaintiff offered these notes in evidence. The defendant asked the witness whether the evidence had been completed before the case was stopped, and the reply was that it had not been. The defendant then objected to the proposed evidence, but the court overruled the objection, and the notes were read to the jury. One fatal objection to this evidence is that the notes were in no manner authenticated. The stenographer did not testify that his notes were an accurate statement of the evidence, nor was he questioned on that subject. Their accuracy was assumed from the mere fact that he was the official stenographer. But there is no law making them evidence generally, nor should there be."

In *Seligman v. Ten Eyck's Estate, supra*, Mr. Justice CAMPBELL, delivering the opinion of the Court in that case, said:

"It was error to allow the stenographer to testify to detached portions of McCormick's evidence on a former trial, to which McCormick's notice had not been called, for purposes of impeachment. If this stenographer's notes were, as they seem to have been, treated as a deposition, then, under the decision in *Lightfoot v. People*, 16 Mich. 507, it was not permissible to allow the stenographer to pick out parts of it. But such notes are in no sense depositions. They are mere minutes of verbal testimony which are of no intrinsic force, and the rule of impeachment is the same as if no notes had been taken, so far as regards the necessity of first interrogating the witness sought to be impeached."

In the present case these questions were put to the defendant himself, upon his cross-examination, and, we think, were

proper as part of his cross-examination. Had the defendant testified, in answer to such questions, that he did not so testify upon the former trial, or that his answers to such questions were not then correctly stated, plaintiff's counsel would not have had the right to offer or have in evidence the printed record from which he examined the defendant, for the purpose of impeaching the witness. Even if the questions were material to the issue, the witness could not have been contradicted by the stenographer's minutes of the former trial. Counsel would undoubtedly have had the right to call the stenographer, or any other person who heard defendant testify, and in that way contradict him; but the minutes taken by the stenographer could not be used for that purpose, and while such minutes could be used by the stenographer who took them, for the purpose of refreshing his recollection as to what the witness did testify, they would not be original evidence of that fact. The minutes are not read over to the witness when taken, and are not signed by him. They are not like a deposition read to the witness, and then signed by him. When the attention of the witness is called to his deposition, the rule is well settled that he has a right to have the same read to him before being compelled to answer as to what he testified to, for the obvious reason that the deposition can be offered and received as original evidence to contradict and impeach the witness; but the stenographer's minutes can be used for no such purpose, and they have no more force as original evidence than minutes taken by any other person during the progress of the trial.

We need not discuss the other assignments of error, as we think the evidence to which they relate was properly admitted.

We find no error in the record, and judgment is therefore affirmed, with costs.

SHERWOOD, C. J., and MORSE, J., concurred. CHAMPLIN, J., did not sit.