GARASZEWSKI *v*. WURM.

1. EVIDENCE—STENOGRAPHER'S NOTES — ADMISSIBILITY — GENUINE-NESS—HEARSAY.

A stenographer's notes of testimony at a former trial are not original evidence, being neither read over to, nor signed by, the witness, and have no greater efficacy than those taken by any other person, and in the absence of the affidavit of the stenographer or other evidence of the accuracy and genuineness of such alleged testimony, it is merely hearsay.

2. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE—CUMULATIVE.

Where alleged newly-discovered evidence would, at most, be merely cumulative, a motion for a new trial was properly denied.

3. SAME.

A motion for a new trial upon the ground of newly-discovered evidence is not regarded with favor, the policy of the law being to require of parties care, diligence, and vigilance in securing and presenting evidence.

4. TRIAL—INSTRUCTIONS—EVIDENCE.

In an action for personal injuries caused by defendant's motor truck in April, 1916, a requested instruction that if plaintiff was injured in April or March, 1917, and concealed that fact, it might be considered in determining the weight of his testimony, was properly refused, there being no evidence that he was injured at that time.

5. SAME—INSTRUCTIONS—DAMAGES.

In such action, where defendant claimed that plaintiff was suffering from previous injuries, an instruction that previous injuries had no bearing on the case unless they were of the same character, was not erroneous, it being evident that the court used the word "character" in the sense of kind, sort, or nature.

Error to Wayne; Dingeman, J. Submitted October 9, 1918. (Docket No. 19.) Decided December 27, 1918.

Case by Andrew Garaszewski against Otto A. Wurm for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Guy W. Moore* and *Hal P. Wilson*, for appellant.

*Clarence P. Milligan*, for appellee.

STONE, J. By his declaration and testimony the plaintiff herein claims that he was injured on April 4, 1916, by a motor truck belonging to the defendant, and being driven by his servant; that at the time the plaintiff was walking on the public sidewalk on the north side of Hendric street, at or near the intersection of the East Grand boulevard and Hendric street, in the city of Detroit; that the motor truck was operated in such a careless and negligent manner that it was steered and driven from the roadway over the curbstone and onto the public sidewalk, striking the plaintiff with great force and violence, before he had time to reach a place of safety, knocking him down and crushing his left foot and injuring his left knee; that he was severely and permanently injured in his left foot and ankle; that by reason of the said injury he was for a number of weeks laid up and kept from his work, which was that of a body-maker in the employment of the Packard Motor Company; that he was unable to earn his former wages by reason of the injury; that he suffered great pain, and had incurred a doctor's bill, and had by reason of said injury a stiff ankle. The plaintiff is a Pole, and he testified through an interpreter. His testimony was corroborated by other witnesses who claimed to have been present at the time of the injury. There was also medical testimony as to the nature and permanency of the injury.

On behalf of the defendant, the driver of the truck testified that the plaintiff was not hit at all, or injured in any manner. The trial took place in May, 1918.

Upon the cross-examination of the plaintiff he testified as follows:

"Q. Have you ever had an accident before this time?

"A. He says, I don't think if a person cuts his finger or something like this, that a person can live without it.

"Q. Did you ever have a street car accident?

"A. Yes.

"Q. How long ago did you have your street car accident?

"A. Several years ago. It would be 3 or 4 years ago.

"Q. And who was your doctor in that case?

"A. Different doctors. Whichever one I could get.

"Q. Dr. Griffiths?

"A. No. He says it was a different doctor. Tall fellow. Altogether different doctor.

"Q. And you were thrown as you were getting off the car, were you?

"A. The car just started and I fell down.

"Q. Fell down on the street, did you?

"A. On the street.

"Q. And how long were you laid up from that accident?

"A. Several weeks I was sick.

"Q. Did you ever have a lawsuit with the Detroit United Railway on that case?

"A. Yes.

"Q. Who was your lawyer in that case?

(Objected to by plaintiff's counsel as incompetent and immaterial, and the objection sustained.)

"Defendant's Counsel: If your honor please, it is nearly time for adjournment, and these things have developed, and I know nothing of, and I would like to have until this afternoon to look into the matter.

"The Court: Be back in your places at two o'clock, gentlemen."

At two o'clock p. m. the cross-examination was resumed as follows:

"Q. As a matter of fact, your street car accident occurred on Friday, the 26th day of February, 1915, did it not?

"*A.* I do not remember the dates.

"*Q.* Well, it happened in February, 1915, didn't it?

"*A.* With this last accident now, my memory is so that I cannot recollect things.

"*Q.* Well, at that time, did you then and there sustain a fracture of the ribs on the right side?

"*Plaintiff's Counsel:* Just a moment. I object to this. I object to any questions along this line, unless, if the court please, the only relevancy that any other injury that he got, might have, in this case, would be that he was claiming in this case for some injury which he sustained on another occasion. Now, unless the counsel is going to show to the court that the injury which he claims in this case was due to some other accident, I object to any examination along those lines. I think we are entitled to know whether he intends to do that.

"*Defendant's Counsel:* If your honor please, we are going to show that he claims to have been well before this accident, this street car accident, and that as the result of this street car accident, he was permanently incapacitated for work. Those injuries were permanent, and that he could not work as a result of these permanent injuries at that time. In other words, we think we have a right to show that he did not come in here a well man, according to the declaration in this case.

"*The Court:* Well, I will take the testimony.

(Question read to the witness.)

"*A.* I was injured on the right side; right side in my hips.

"*Q.* Causing continued and great pain in the side upon inhalations and deep breathing?

"*A.* There is nothing about me since. I am all right now.

"*Q.* And did you tell the court that that was a permanent affliction because of adhesions of the pleura and the ribs?

"*A.* I do not remember.

"*Q.* And that you received a severe concussion of the right ear drum, of a permanent nature?

"*A.* I can hear.

"*Q.* And do you say that your injuries from the street car accident were permanent, and will always

prevent said plaintiff from engaging in hard manual labor, and permanently impair his health and strength?

"A. I don't remember.

"Q. And did you tell the court that you were permanently hurt, crippled and injured?

"A. I say that I cannot remember distinctly now.

"Q. And that you had to go to the hospital?

"A. Yes, naturally, when I was hurt, I said that.

"*Defendant's Counsel:* I think that's all."

Later the plaintiff was recalled and testified as follows:

"Q. Mr. Interpreter, will you ask the plaintiff, after the street car accident, how long it was before he returned for the Packard Motor Car Company?

"A. It was some time, I exactly don't remember, maybe four, maybe five months afterwards.

"Q. When you returned what condition were you in?

"A. I was not feeling just exactly.

"Q. Well, were you better, able to work, as you did before?

"A. Work, and I was strong enough to work."

Counsel for defendant, among other things, requested the court to charge the jury as follows:

"*Fourth:* I charge you that if you find that the plaintiff was injured in April or March, 1917, and concealed that fact from you, then you may consider the fact of such concealment in determining the weight to which his testimony is entitled.

"*Ninth:* I charge you that under his oath it was the duty of the plaintiff to disclose to you every cause, fact, and condition, bearing on the extent of his disability.

"*Tenth:* I charge you that the wilful concealment of other disabling injuries, if you so find, with an intent to charge this defendant therefor, is fraud."

Neither of the above requests to charge was given.

The case was submitted to the jury in a very full and clear charge, in which, referring to witnesses generally, the following language was used:

"You have the right to say and ask: Has this witness, in telling his story, been fair and frank, or has he been elusive, trying to avoid direct answers to questions? Has he tried to conceal, rather than to tell fully and fairly all of the facts? Is the witness interested in, the outcome of the case, or is he a disinterested witness? If interested, has he, notwithstanding any such interest, been entirely frank and truthful, or has his interest biased him and colored his testimony? These are the right considerations which should be borne in mind when you come to pass upon the relative value and weight of the testimony of each of the witnesses, for you have to plant your verdict upon what you find the truth to be. * * *

("Now, gentlemen, if after a fair consideration of the case you determine that the plaintiff is entitled to recover, then another phase of the case arises for your consideration, and in this connection, I charge you that the courts are open to redress injuries, and persons have a perfect right to sue for injuries, sustained at the hands of others, one or more times, and the fact that the plaintiff was injured before the present accident has no bearing whatever on his right to recover in this case, unless the injuries sustained in some other case are of the same character as the injuries for which he is suing in the present case.)

"Now, in approaching the question of damages in this case, if you come to it, you should bear in mind that it is the purpose of the law in awarding damages to award full, fair, adequate compensation for any and all injuries growing out of the accident complained of. The purpose of awarding damages is not to punish the defendant. No such theory as that at all should occupy any juror's mind when he considers the question of awarding just and proper damages. But the rule of damages is to award, as nearly and fully as money can, each and every injury for which the jury find the defendant to have been responsible. Approaching this phase of the case, if you come to it, in that spirit, what are the elements that you may rightly consider, if you determine that the plaintiff is entitled to damages?

"First, let me say to you, gentlemen of the jury, that no damages can be assessed against this defendant because of any injuries which the plaintiff may

have sustained in any accident other than the one in question in this case.

"Excluding, then, any damages of the nature just suggested, you should ascertain the extent of any injury growing directly and necessarily out of this accident."

The trial resulted in a verdict and judgment for the plaintiff for $2,500 damages and costs of suit. The defendant made a motion for a new trial, upon the following grounds:

1. That the verdict was excessive.

2. That on or about October 4, 1916, or six months after this claimed injury, plaintiff, in a suit against the Detroit United Railway, testified in court as follows: (Here follows alleged testimony of plaintiff in suit against the Detroit United Railway.)

3. That in the instant case, plaintiff's witnesses testified that by September, 1915, he had entirely recovered from those former injuries, and plaintiff testified that he was off work, by reason of this accident, five weeks in the spring of 1916. That he had lost 60 or 70 days' time. That his pay was reduced instead of increased. And that Dr. Griffith was not a witness for him.

4. That in plaintiff's Detroit United Railway trial Dr. Griffith testified as follows: (Here followed the alleged testimony of Dr. Griffith in the case against the Detroit United Railway.)

5. That the plaintiff, and his doctors in this case, have in another court testified that plaintiff, at least six months after this claimed accident, was still permanently disabled, deafened and suffering a hip injury which he was trying to cure—that the doctor was trying to keep down the inflammation of the pleura, and that all these injuries were the result of said former accident.

6. That plaintiff claimed in this trial that, when this defendant injured him, the plaintiff was then a

well man—whereas plaintiff was not well, and when he described his condition to the former jury, had forgotten all about this claimed accident.

7. That plaintiff had attempted fraud on this defendant; that he knew or was advised the proof of a former continuing injury would decrease his verdict, if any; therefore, that proof was missing.

8. That proof of the former testimony of plaintiff and his doctor would render a different result probable.

An examination of the affidavit in support of this motion fails to show where, or of whom, the alleged former testimony was obtained. There is no proof of its accuracy, or that such testimony was ever given by the plaintiff or by Dr. Griffith. The affidavit in support of the motion simply states—

"that he (deponent) was so busily engaged in the trial of this case, that he had no opportunity to secure the testimony of plaintiff and his doctor until after the trial."

We infer from the brief of appellant's counsel, that it is claimed that such alleged testimony was found in the court stenographer's notes of the former trial. But we have repeatedly held that a stenographer's notes of testimony are not original evidence, being neither read over to, nor signed by, the witness, and have no greater efficacy than those taken by the judge, or by any other person. *Barker* v. *Hebbard,* 81 Mich. 267; *Toohey* v. *Plummer,* 69 Mich. 345, 350. See collection of cases upon this subject in *Merrill* v. *Leisenring,* 166 Mich. at p. 227. In the absence of the affidavit of the stenographer, or some other evidence of the accuracy and genuineness of such alleged testimony, it was merely hearsay.

The motion for a new trial was denied upon this ground on its merits, and in his reasons for denying the motion the learned circuit judge said:

"In the trial of the case at bar, defendant was permitted to introduce the declaration filed in the case against the railway company, and plaintiff was cross-examined as to the injuries and claims made by him in the previous action. The proofs in the case at bar were closed on Friday afternoon, and at counsel's request, the cause was continued until the following Monday for argument, and submission to the jury. On Monday, counsel for defendant asked leave to reopen the case to introduce further testimony; the case was reopened and a witness testified on behalf of defendant, as to certain matters not material to this inquiry. No request was then made, or at any time during the trial, for an opportunity to secure the testimony in the street railway case, nor was any claim made that any attempt had been made to secure the same, or that it was desirable to have it. No sufficient showing is now made, in my judgment, to warrant the court in setting aside this verdict upon this ground, especially in view of the fact that the alleged newly-discovered evidence would, at most, be merely cumulative."

The court, however, held that the judgment was excessive, and required the plaintiff to remit $1,000 as a condition of denying the motion. That amount was remitted and the judgment stands for $1,500 damages.

Defendant's counsel failed to except to the denial of the motion for a new trial, and application has been made to this court to remand the record for resettlement of the bill of exceptions, in order that defendant may reduce to writing and file an exception to the refusal to grant such motion. Without discussing the wisdom of the practice here proposed, it is sufficient to say that in our opinion such proposed exception would be unavailing, for the reason already stated, and for the reasons stated by the circuit judge.

"A motion for a new trial, upon the ground of newly-discovered evidence, is not regarded with favor. The policy of the law is to require of parties care,

diligence, and vigilance in securing and presenting evidence." *Canfield* v. *City of Jackson*, 112 Mich. 120.

This case has been referred to many times with approval, as an examination of Shepard's Michigan Citations will show. The circuit judge reached the correct conclusion on the motion.

The case is here upon errors assigned by the defendant. The first error assigned is that the court erred in refusing to give the three requests to charge, above set forth. The fourth request was properly refused for the reason that there was no evidence that the plaintiff was injured in "April or March, 1917."

The state of the record as it appeared upon the trial, did not justify the giving of the ninth or tenth request. The charge upon the subject of the credibility of witnesses was sufficient to cover the case, as presented by the evidence.

The second assignment of error is that the court erred in charging the jury in the language embraced in the parentheses, above set forth—and the court is criticised for using the words: "unless the injuries sustained in some other case are of the same character as the injuries for which he is suing in the present case."

Taking the charge as a whole, it is evident that the trial court used the word "character," in the sense of kind, sort, or nature, which was permissible; and when taken in connection with the language immediately following, we think was understood by the jury, and was not erroneous.

We find no reversible error in the record, and the judgment below, as modified upon the motion for a new trial, is affirmed.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.