### GROWTH OF THE LAW TO FIT NEW CONDITIONS.

Common Pleas Court of Franklin County.

SAMUEL HEIMLICH v. THE DISPATCH PRINTING CO.; AND SAMUEL HEIMLICH v. THE OHIO STATE JOURNAL CO.

Decided, January Term, 1915.

*Constitutional Law—Validity of the New Law of Libel—Modifying the Rule as to Liability Without Regard to Moral Turpitude—Everything Filed in a Competent Court of Justice is Public Property and May be Examined, Discussed and Published—Sections 11342-3.*

The present Ohio statutes relating to libel do not contravene any provision of either the state or federal Constitution, but are a proper exercise of legislative power; and a fair and impartial report of the filing and of the contents of an affidavit in a criminal action, pending at the time in a court of competent jurisdiction, is privileged and against such publication there is no remedy.

*J. L. Stern*, for plaintiff.

*Bennett & Westfall*, contra.

KINKEAD, J.

In the cause against the Dispatch Printing Company the following charges in libel are complained of by plaintiff, an attorney:

"As the result of the investigation made by W. D. Yaple, at Chillicothe, into the referendum petition filed from that place, a warrant was sworn out Monday evening for the arrest of Samuel Heimlich (meaning plaintiff), an attorney of Cleveland, which circulated petitions there, charging him (meaning the plaintiff) with perjury. The perjury consisted in swearing that the name of B. F. Butler on a petition that he (meaning plaintiff) filed was genuine. It (meaning petition) is declared by Butler to be a forgery." (Meaning and intending thereby to mean that the plaintiff either forged the name of the said B. F. Butler or aided and assisted in causing the name of said B. F. Butler to be forged.)

A second cause of action charges the publication of the following false and defamatory matter on July 23, 1913:

"The Attorney-General's office, however, expects to file another warrant against Heimlich (meaning plaintiff) based on other evidence of alleged fraud in connection with the same law."

An allegation is made a part of this cause of action that it was meant to convey the impression that although the plaintiff was found to be not guilty of the crime of perjury, as intimated in the libelous article referred to in the foregoing first cause of action, yet the plantiff was guilty of other crimes of "perjury," and had perpetrated other frauds, which crimes and frauds would and should subject the plaintiff to criminal prosecution and conviction.

A third cause of action charges the publication on August 2, 1913, of the following alleged defamatory matter, to-wit:

"McMillan is attorney for Samuel Heimlich (meaning plaintiff) of Cleveland who (meaning plaintiff) is now charged with perjury."

The defamatory matter complained of in the case against the *Ohio State Journal* is as follows:

"W. C. Archer, secretary of the state liability board of awards yesterday made affidavit to a warrant charging Samuel Heimlich (meaning plaintiff) with perjury in certifying the name of B. F. Butler of Chillicothe as genuine on a petition. The name is said to have been forged.

"A second affidavit, charging perjury, was filed at Columbus police headquarters yesterday against attorney Samuel Heimlich of Cleveland. He is charged by Edward Donavin Waverly, a deputy fire marshal, with having sworn that Harry Walker a drug clerk who signed a petition for a referendum on the workmen's compensation law was an elector. Walker it is said told Heimlich that he was not of age, but Heimlich insisted that he sign anyhow, as it would make no difference."

Damages in the sum of $100,000 and $75,000 are prayed for in the two cases respectively.

The answer of the defendant, the Dispatch Printing Company, avers in substance that each and all of the publications were made in good faith, without any information that the

statements were not true, but with reasonable grounds for believing the same to be true; that defendant had no malice in the publication, and that plaintiff did not demand or request a retraction.

It is further averred that the publications were each and all a fair and impartial report of the contents of and the filing of an affidavit in a criminal action pending at the time in the police court, a court of competent jurisdiction, the affidavit having been sworn to by Wm. C. Archer before the police court clerk; that they were each and all privileged classes.

A demurrer is filed to the second defense of the answer. The answer by the Ohio State Journal Company avers:

"That each and all of said publications complained of were made in good faith, without any information that the statements contained therein were not true, etc.; that the said defendant had no malice whatsoever in the publication of the same and that said plaintiff did not demand or request a retraction thereof by the said defendant."

Defendant further says that:

"The publications and each of said publications  *  *  * were publications of a fair and impartial report of the contents of and the filing of an affidavit in a criminal action,  *  *  * then pending  *  *  * in the police court of the city of Columbus, etc., said affidavit being sworn to by, etc., that said police court  *  *  * was a court of competent jurisdiction, etc.;  *  *  * that  *  *  * said publications  *  *  * were, and each of them are privileged publications," etc.

A general demurrer is filed to both answers.

The answer is filed under Section 11343-2, which provides that:

"The publication of a fair and impartial report of  *  *  * the issuing of any warrant, the arrest of any person accused of crime, or the filing of any affidavit, pleading or other document in any criminal or civil cause in any court of competent jurisdiction or of a fair and impartial report of the contents thereof, shall be privileged, unless it be proved that the same was published maliciously, or that the defendant has refused or neglected to publish in the same manner in which the publication com-

plained of appeared, a reasonable written explanation or contradiction thereof by the plaintiff, or that the publisher has refused, upon request of the plaintiff, to publish the subsequent determination of such action.''

The contention of the plaintiff is that the statute is unconstitutional, and hence the defense must fail; that the defamatory matter is *per se* libelous entitling plaintiff to compensatory and punitive damages.   It is urged that under the rule adopted by *Cincinnati Gazette Co.* v. *Timberlake,* 10 O. S., 549, and *Byers* v. *Meridian Printing Co.,* 84 O. S., 549, the statute is invalid.

The doctrine of the *Timberlake* case is that the rule of privilege does not extend to preliminary proceedings of *ex parte* character such as the filing of an affidavit before a police magistrate for an arrest.

In *Byers* v. *Meridian Printing Co., supra,* the doctrine of privilege of the *Timberlake* case was reaffirmed, and the statute, Section 5094, which provided that good faith through mistake in publication and failure to demand retraction shall rebut the presumption of malice from the publication, was held invalid.

The present statute is radically different from the former one. It constitutes a fair and impartial report such as is claimed in the answers an absolute privilege for which there can be no remedy.

The logic of the argument of counsel for plaintiff is, that the Supreme Court having held a statute providing that good faith and failure to retract upon demand, rebuts the presumption of malice, is invalid, because it takes away a substantial right as well as infringing upon the right of due process of law; *a fortiori,* a statute which constitutes a fair and impartial report of papers duly filed in court, a privilege, should also be held invalid.

It is also argued that this court would reverse the decision in *Byers* v. *Meridian Printing Co.,* if it holds this law valid.

The statute under consideration creates a privilege from liability which has not heretofore been recognized by judicial precedent.   The privilege of the press heretofore has extended only

to proceedings of action actually taken by courts, it having been held not to embrace the filing of an affidavit in an inferior court or the filing of a pleading.

The statute does not interfere with "due process" so far as its provisions apply to the right of one injured by an alleged libel to prosecute an action in court by "due course" for redress. This is what due process means, and this is all that is comprehended by the Constitution. It does prescribe a new rule of liability in cases where a newspaper in good faith, without malice, makes a fair and impartial report of papers filed in a court of competent jurisdiction. This legislation undertakes to deal with the moral and inherent rights of parties. Heretofore an absolute liability has been imposed upon the "press" without regard to the turpitude of the act of publication, damages being assessed though good faith be exercised in publishing matters of public record which are open to the world. An individual may be injured by a publication of papers filed in court for which the press is in no wise *morally* responsible. The right of free speech of the press under the Constitution, is correlative with the right of redress for injury to reputation; that is, both are guaranteed in general terms by the Constitution, which leaves it to the Legislature or judiciary to prescribe the rules of substantive law relating to the injury. The press has heretofore been unequally treated by imposing a liability without regard to the moral turpitude of its act. The preponderant public opinion and custom, aside from a very few judicial expressions, now is that everything filed in a court of competent jurisdiction is public property which may be examined, discussed and published. Especially does this view apply to the conditions in our commonwealth under the present Constitution which constitutes the people law-makers under the initiative and referendum, and to all that takes place in any of the public offices concerning or affecting this function of the people.

Therefore any public charge of criminality, though preliminary in character, concerning the mode of exercising this right, ought to be and is public property, which should, in public morals, be within the privilege of a newspaper for the knowledge

and information of the public pursuant to the right of the press recognized by the Constitution.

It is said that designing wicked persons under such a rule of immunity will file false and malicious charges with an avowed purpose to have it published by the press expressly to injure others.   Occasionally, that might happen; it has happened recently as to all the judiciary of this country.  But the fact that no adequate provision for a penalty has been made for such an act, furnishes no reason for denying a privilege extended by statute to those who act innocently, in good faith and without malice in publishing public news.   The abuse of the right of free speech to be redressible at law should be measured by the same rules of good faith, or of innocence, and absence of evil or intentional wrong-doing, as are those applying to the person injured and his right to relief.   Justice is impartial, not partial.

When our Constitution was adopted every citizen possessed the inherent right to life, liberty, reputation and property.  But such right must be measured in its scope and extent, and should be exercised with due regard to equal rights of others.   It is axiomatic that when one becomes a member of society, he necessarily yields some rights to others in the ordinary social intercourse.   The basis of all actionable injury is a wrongful act.

A citizen has the right of enjoyment of his reputation, while the press has the right of free speech being responsible for its abuses.   Both are entitled to due process of law for the redress of injuries, or for the *defense* of one's rights.   The rights are equal in these respects.   The rules of conduct and of liability must rest upon sound basis of morals, giving the one injured a remedy where the act causing the harm is morally wrong, and therefore legally wrong.

When our Constitution was adopted its general principles were grounded on those of the common law.   It was not contemplated however that these were to be stationary, but it was expected and intended that there should be a normal, natural growth and development of sound principles governing social intercourse, social justice, so that the conflicting interests may be equitably adjusted with the least injury possible to either, and according to the nature of the wrong and the relative right.-

It was to be expected that the Legislature was to apply and extend the general provisions to new conditions as they arise in order to guard every right, and prevent every injury according to sound principles of morals and justice. Its judgment in matters of policy is supreme so long as it does not clearly infringe upon specific constitutional limitation or restriction.

No such privilege as the statute now prescribes had ever been decided to exist when the Constitution was adopted. The power to create such privilege is concededly with the Legislature, so long as it does not conflict with constitutional right. Fifty years ago such a privilege was held not to exist in the Timberlake case, *supra*. Following the reaffirmance of this doctrine in 1911, in the Byers case, the present law was expressly enacted to change the rule of these decisions.

It is said that the right to recover in an action for libel to reputation can not be abridged by statute. *McGee* v. *Baumgartner*, 121 Mich., 287; *Byers* v. *Meridian Ptg. Co.*, 84 O. S., 408.

The determination of the question involves the consideration of the following provisions of the Constitution of the state and federal government:

Article I, Section 15, Constitution of Ohio:

"Every person, for an injury done him in his land, goods, person, *or reputation*, shall have *remedy by due process of law.*"

U. S. Constitution, 14th Amendment:

"No state shall make or enforce any law which shall *abridge* the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property without due process of law."

The ground of nullification of former Section 3094, Revised Statutes, was that by the settled principles of the common law, the publication of defamatory matter, which is false in fact and not privileged, is presumed to be malicious, that is, the plaintiff may recover without proving malice, the burden being upon defendant to disprove it; that this is substantive law, not

mere matter of procedure, which rules have always been re-
garded as primary and essential in the law of libel for protection
of reputation.   These rights, it is said, the Legislature did not
give to the libeled person and the Legislature can not take them
away; they are regarded as part of the "remedy by due course
of law" of which the Constitution declares that no person shall
be deprived.

In its final analysis, the correct interpretation of *Byers* v.
*Meridian Ptg. Co.* must be that the common law having con-
ferred upon the person libeled a right of action, it was abridged
by the statute.

The rule always has been, that actual malice may be disproved
by proof of good faith.   The former statute extended the rule
to rebut the legal malice which might on trial prevent any re-
covery.   As the law stood before the statute, plaintiff was en-
titled to recover nominal damages in any event.

One point of the decision to which special attention is di-
rected is the view expressed that the presumption of malice and
burden of proof is part of the "remedy by due course of law,"
and therefore is within the inhibition of Section 16 of Article I,
Ohio Constitution.

It may be remarked that the decisions touching the burden of
proof are conflicting in cases where there is a presumption in
favor of plaintiff.   A view opposite to that of the Byers case was
expressed in *Klunk* v. *Railway,* 74 O. S., 125, where it was held
that a presumption establishing a *prima facie* case does not im-
pose the burden on defendant of establishing that it was not
negligent.   In *Ginn* v. *Dolan,* 81 O. S., 121, the court changed
the rule of burden of proof as to negotiable instruments, hold-
ing that notwithstanding the presumption of consideration
from execution and delivery of a note, the burden of proof still
remained on plaintiff, where the consideration was questioned.

It is to be observed that the universal rule of procedure has
ever been that legal presumptions constituting a *prima facie* case
are always subject to be rebutted by proof of good faith and
proper conduct, by the overbalancing evidence of defendant.
The rule has always been (until the decisions above referred to),

that when plaintiff has a *prima facie* case the burden of disproving it is on defendant. Of course the weight of the evidence must always support plaintiff, or he will fail. But libel *per se* where the presumption establishes legal malice seems to have been in a class by itself. But there is no good reason why the presumption may not be rebutted such as other presumptions are rebutted.

But this is beside the question of the *remedy by due course of law*, as contemplated by Article I, Section 16, Constitution. Some definitions are given in 84 O. S., 421, of "due course of *law*." They are not sufficiently concrete.

Remedy by due course of law means that a party shall have a hearing in the regular course of administration; a party must have a trial according to some settled course of proceeding; the kind of procedure according to law, which is suitable and proper to the nature of the case and sanctioned by the established usages and customs of the courts; a course of legal proceedings according to these rules and principles which have been established by our jurisprudence for the protection and enforcement of private rights. 8 Cyc., 1080-1082.

Matter of procedure is always subject to change. Due course of law has relation to adjective law, and not to substantive right which has to do with "*injuria*," or injury.

The effect and the ground of the decision in the *Byers* case is best understood in the light of these suggestions as to procedure, and the effect of the former statute would be to enable a defendant by proof of good faith, or failure to demand retraction to rebut legal malice as well as malice in fact which in the end would prevent recovery. To create a privilege, as the statute now provides, does not at all abridge the remedy by due course of law, but instead confers a *right* upon one to the detriment of another by allowing good faith to rebut a presumption of malice. To cling to such an arbitrary fiction of law at the expense of logic and reason and of sound morals, is to invalidate a legislative enactment upon the sheerest kind of technicality which can only be repudiated by constitutional amendment.

We do not agree with the doctrine of *Park* v. *Free Press Co.*, 72 Mich., 560, 568, as quoted in 84 O. S., 420, because we think

there is no specific provision in our Constitution which forbids the Legislature to modify or change the right of action for libel.

To invalidate this statute we must conclude that somewhere in the *spirit* of the Contsitution, though not in the letter, the right of one to complain of libel as it existed at common law before our Constitutions were adopted can not be taken away, or changed by the Legislature. Such a view ignores the fundamental principals of reason, justice and law.

A question arises whether the denial of a right of recovery for publishing defamatory matter contained in an affidavit filed in court, which is a fair and impartial report thereof, and which is done in good faith and without malice, is inhibited by the Constitution.

Is the Legislature in its action concerning a *remedy* for an *injury* limited to the rule of the common law? May it make material change in a right to recover dmages for an *injury* to reputation by providing that the exercise of good faith and by innocent conduct there shall be no liability?

If the constitutional provision is to be construed in the common law sense, then the scholastic view of the meaning of *injury* is to be adopted. There can be no *remedy* under Article I, Section 16 of the Constitution, until there has been an *injury*. *Injury* and *remedy* denote two separate rights, one substantive, the other adjective. When an actionable injury may exist is to be determined by the common law, the rules of which may be changed so long as constitutional right be not violated.

There is no provision in the Constitution which will prevent the Legislature from modifying a common law right of action for libel by depriving a plaintiff of the right to sue, where the defendant is innocent of wrong-doing. There is no vested right in a "right of action" or in a "defense" unless specificially protected by the Constitution. See *Campbell* v. *Holt*, 115 U. S., 628.

Mr. Justice Waite has well stated that:

"A person has no property, no vested interest, in any rule of the common law. That is only one of the forms of municipal law, and is no more sacred than any other. Rights of property which have been created by the common law can not be taken away without due process; *but the law itself, as a rule of con-*

*duct, may be changed at the will, or even whim of the Legislature, unless prevented by constitutional limitations.   Indeed the great office of statutes is to remedy defects in the common law as they are developed and to adapt it to the changes of time and circumstances.   Munn v. Illinois, 94 U. S., 134.*

Mr. Justice Matthews in *Hurtado* v. *California,* 110 U. S., 516, 530, remarked:

"This flexibility and capacity for growth and adaptation is the peculiar -boast and excellence of the common law.   *   *   * The Constitution   *   *   * was ordained,   *   *   * by descendants of Englishmen, who inherited the traditions of English law and history; but it was made for an undefined and expanding future.   While we take just pride in the principles and institutions of the common law, we are not to forget that in lands where other systems   *   *   * prevail, the ideas of civil justice are also not unknown. ·   *   *   * Due process of law, in spite of the absolutism of continental governments is not alien to that code which survived the Roman empire as the foundation of modern civilization in Europe, and which has given us that fundamental maxim of distributive justice—*suum cuique tribuero.*   There is nothing in Magna Charta, rightly construed as a broad charter of public right and law, which ought to exclude the best ideas of all systems and of every age; *and as it was the characteristic principle of the common law to draw its inspiration from every fountain of justice, we are not to assume that the sources of its supply have been exhausted.   On the contrary, we should expect that the new and varied experiences of our own situation and system will mould and shape it into new and not less useful forms.*"

Mr. Justice Brewer, in *Brown* v. *New Jersey,* 175 U. S., 172, 175, said:

"The state is not tied down by any provision of the Federal Constitution to the practice and procedure which existed at the common law.   Subject to the limitations ·   *   *   .*   it ·may avail itself of the wisdom gathered by the experience of the century to make such changes as may be necessary."

Mr. Justice Moody, in *Twining* v. *New Jersey,* 211 U. S., 77, 101, said:

''It does not follow, however, that a procedure settled in English law   *   *   *   and brought to this country and practiced by our ancestors, is an essential element of due process of law. If that were so the procedure of the first half of the seventeenth century would be fastened upon the American jurisprudence like a straight-jacket, only to be unloosed by constitutional amendment.''

Applying these wholesome thoughts and principles to the question, we are clearly warranted in acting upon moral principles of liability and justice as they are embodied in this statute, and as the changed conditions, views and custom now clearly warrant, and we are justified in concluding that there is no constitutional impediment to prevent the passage of a law changing a common law rule concerning a right of action.   As the Constitution in no wise undertakes to prescribe what shall in law constitute an injury, it lies, therefore, within the clear province and power of the Legislature to change a common law right.   There seems to be no shadow of doubt that the Legislature may provide that good faith may be allowed to rebut the *prima facie* case of libel classified as libel *per se,* just as it might enact a law, that there shall no longer be a presumption that a note is founded upon a valuable consideration, placing the burden upon the plaintiff to prove consideration.

We are firmly of the opinion that any right of action or of defense may be modified by either judicial decision or by the Legislature if not within clear constitutional protection.   The right of action for libel, where the act of defendant is innocent of wrong-doing, is nowhere guaranteed as a vested constitutional right.   Previous consideration of Section 16 of Article I, has failed to take into account the distinction before adverted to, between *injury done to reputation,* and *remedy by due course of law.*   The Legislature may change or modify either.

The statute does not contravene Section 1 of the Ohio Bill of Rights, nor Section 1 of the Fourteenth Amendment of the Federal Constitution.   It is, in the judgment of the court, a proper exercise of legislative power and a constitutional enactment.

The demurrer to the answer as to the first and second cause of action in cause No. 68027 against the *Ohio State Journal* is overruled. As to cause No. 68026 against the Dispatch Printing Co. it is overruled as to the first but sustained as to the second and third causes of action, the charges there made appearing not to have been with reference to an affidavit filed in court, and the defense not being specific as to these.