DANIEL A. CALDWELL ET AL. V. HERBERT BOWEN, TRUSTEE, ET AL.

*Replevin—Jurisdiction—Costs—Sale—Fraud—Rescission—Declaration—Evidence—Commercial agencies—Reports.*

1. A reporter for a commercial agency, having testified to procuring a statement of the financial standing of a merchant, which he reduced to writing, and a copy of which he had in his possession, was asked to refresh his recollection from the copy, and after stating that he could not remember the figures, but could state what the statement was by reading it, was permitted to read from the copy to the jury; and it is held that the testimony was incompetent, the effect being the same as if the copy had been introduced in evidence; citing *Fowler v. Hoffman,* 31 Mich. 215; *Cameron v. Blackman,* 39 Id. 108.[1]

2. A statement in a declaration in replevin, immediately following the description of the property, that it is an invoice of goods sold by the plaintiffs to the defendants' mortgagor, is mere description, and in no way affects the right of the plaintiffs to proceed as upon a rescission of the sale of the goods for the alleged fraud of the mortgagor in making the purchase.

3. Vendors, on rescinding a sale, brought replevin, and in the affidavit, writ, and declaration alleged the value of the goods to be $115.50, being the price agreed to be paid by the vendee. Goods appraised at $64.70 were seized on the writ, and the only evidence of the value of the goods not found was the aforesaid agreement. Judgment passed for the plaintiffs on the main issue, and it is held that they were entitled to costs under How. Stat. § 8964 (subd. 4), which gives a plaintiff in

---

[1] See *Mooney v. Davis,* 75 Mich. 188, where it is held that such a copy is admissible in connection with testimony tending to show the approval of the statement, as written down, by the merchant.

replevin costs if the circuit court has exclusive or concurrent jurisdiction.

Error to Wayne. (Reilly, J.) Argued April 16, 1890. Decided May 2, 1890.

Replevin. Defendants bring error. Reversed. The facts are stated in the opinion.

*George W. Radford,* for appellants.

*John W. Beaumont (Floyd R. Mechem,* of counsel), for plaintiffs.

LONG, J. This action of replevin was tried in the Wayne circuit court before a jury, where the plaintiffs had judgment. Defendants bring error. Twelve errors are assigned.

It appeared upon the trial that the plaintiffs, who were copartners doing a mercantile business at Lynn, Mass., sent to F. T. Adams & Co., a quantity of ladies' shoes on or about October 29, 1887. The goods were sold on credit, and were claimed to be worth the sum of $115.50. The goods were ordered by Mr. E. T. Adams, by letter addressed to the plaintiffs at Lynn, Mass., dated June 1, 1887, and the order to be filled in the following October. It appears that the plaintiffs had, in the January previous, made inquiry as to the financial standing of Mr. Adams; and March 10, 1887, Edward Russell & Co., a mercantile agency, sent them, in answer, that E. T. A. (meaning E. T. Adams) states:

" Have no partner, but carry on business as above.[that is, as E. T. Adams & Co.] Have in stock about $18,000; outstanding accounts, $3,000; liabilities, $7,000, of which about $2,500 is to the bank, balance for merchandise. Have met all paper at maturity, but am behind probably 30 days with some of my bills; but owe no one firm over $500."

Plaintiffs claim that it was in reliance alone upon this information obtained from this mercantile agency that they sent the goods to Mr. Adams. About November 14, plaintiffs received a circular letter from Mr. Adams that he was in financial embarrassment. Mr. Adams, in that circular letter, says:

"My financial embarrassment, which has been known to many of my creditors, if not all, for some time past, has at last become such that, being unable to see any hope or prospect of future success, I have secured as best I could those who have loaned me the capital with which I have done business, by giving chattel mortgages as follows: To Herbert Bowen, trustee, $3,000.00; Sarah F. Adams (my mother), $11,108.00; Laura S. Adams (my sister), $1,506.00."

Mr. Adams then gives in this letter his version or explanation of how his embarrassment occurred, and in which he states a large part of this indebtedness as accruing and outstanding prior to January 1, 1887. Immediately upon receipt of this circular letter, the plaintiffs telegraphed Mr. Beaumont, their attorney in Detroit, to rescind the sale to Adams & Co. upon the ground that the statements upon which they relied in making the sale were untrue, and to bring replevin for the goods.

The plaintiffs, to make their case on the trial in the court below, produced Mr. W. C. Pungs, who testified that he was reporter for R. G. Dun & Co., whose business is reporting the standing and credit of merchants throughout the city and other places; that there are several branches of R. G. Dun & Co.; that it is Dun, Wyman & Co. in Canada, and Russell & Co. in several states east; that on March 10, 1887, he visited Mr. E. T. Adams for the purpose of getting a statement of his financial condition, and had a copy of the statement with him. Witness was then asked, and permitted to answer, the following questions:

" *Q.* Do you remember what the statement ·made by Mr. Adams was?

"*A.* I have a copy of it, and I will swear that he made it to me; and I remember distinctly going to his store and getting the statement.

"*Q.* Can you refer to the copy and refresh your recollection in such a way as to remember what the statement was? [This was objected to by defendants' counsel as incompetent and immaterial, and the objection overruled.]

" *A.* I can't remember the figures, but I remember going to the store.

" *Q.* By refreshing your recollection from the statement, can you say what the figures were, and what the result of the statement was? [This was objected to on the ground that the statement was not in court.]

" *By the Court.* If you have any paper or memorandum from which you can refresh your recollection as to what the statement was.

"*A.* In my hand I have a copy of it,—a copy of the statement made by him to me.

" *Q.* Refresh your recollection. Can you state what the statement was? `

" *A.* Yes, by reading it; yes, sir.

" *Q.* What was his statement? [This was also objected to on the ground that it was incompetent and immaterial under the pleadings. The witness answered, and gave the same statement that has been heretofore set out as coming from Edward Russell & Co. to the plaintiffs, and upon which they claimed to have given the credit to Mr. Adams.]

" *Q.* What did you do with that statement?

"*A.* Put it on our records in the office.

" *By Defendants' Counsel.* That is read from a statement?

"*A.* No, sir; from a copy of the original."

Defendants' counsel then moved to strike out the testimony. This the court refused. The witness then testified that he made this statement in the shape of a report, and it went on the books of R. G. Dun & Co. and on the records; that he asked Adams for this statement of his financial standing, and Adams gave it, and

knew the witness' business, and the purpose in asking for a statement of his affairs; that the commercial agency of Russell & Co. was of Boston, Mass., and that the statements made to R. G. Dun & Co. are furnished to Russell & Co., of Boston; but that he could not swear that this statement was transmitted to Russell & Co., as he did not do the mailing.

The contention of defendants' counsel here is that—

"It was evidence of a statement, the original of which was not in court, nor any evidence introduced that it had been lost; and the evidence of this statement is obtained from an alleged copy, without proof as to who made the copy, or as to its correctness, further than from Pungs' memory after reading the alleged copy in court two years after it was taken. Nor is there any evidence that the original statement, or a correct copy thereof, was ever furnished to Russell & Co., of Boston, and by them to plaintiffs. Under such circumstances, the original statement, if any was ever made, was the best evidence, and, in the absence of any proof that the original had been lost, the alleged copy was not admissible without proof of its correctness by the clerk or person who made it; and that there is no evidence who made the copy, or how many times it had been copied."

The witness, however, testified:

"I have a copy of it, and I will swear that he made it to me; and I remember distinctly going to his store and getting the statement."

It was to this copy that his attention was called, and from which he was asked to refresh his recollection. It did not matter whether it was a copy of the statement, or the one he took at the time he made the visit to Adams to get the information; he could use either to refresh his recollection. The only question is, did it refresh his recollection so that he could, with the aid of the paper, state what Adams told him? The original paper upon which he took down the statement made by Adams would not have been evidence, of itself, of the

facts therein stated; and the witness had as good right to refresh his recollection from the copy as he would have had to refresh it from the original. Mr. Pungs says he could not remember the figures, but could remember that he went there and got the statement, and the paper he held was a copy of it. He was permitted to read from the copy held in his hand. As we have said, the copy could not be used in evidence; and it did not appear in the case that the witness, after having refreshed his recollection from the paper, was able to state what Mr. Adams told him, and from which he made his report to R. G. Dun & Co. The effect of receiving the evidence by reading from the paper was the same as though the paper was put in evidence. It was, therefore, but hearsay, and wholly incompetent. *Fowler v. Hoffman,* 31 Mich. 215; *Cameron v. Blackman,* 39 Id. 108; *Folsom v. Log-driving Co.,* 41 Wis. 607; *Com. v. Ford,* 130 Mass. 64; *Huff v. Bennett,* 6 N. Y. 337; *Howland v. Willetts,* 5 Sandf. 219; *Railroad Co. v. Adler,* 56 Ill. 344; *Mead v. McGraw,* 19 Ohio St. 55.

It is also contended that the plaintiffs were not entitled to introduce any evidence under the declaration, for the reason that the declaration alleged that the goods were sold to E. T. Adams & Co. The declaration is in the usual form in replevin; but, after describing the goods, it is alleged:

"Being an invoice of goods sold on or about June 1, 1887, by said plaintiffs to Edward T. Adams, who formerly did business under the firm name of Edward T. Adams & Co., of Detroit, Mich."

This is mere description, and in no way affected the right of the plaintiffs to proceed as upon a rescission of sale.

It is also claimed that the court should have directed judgment for the defendants for costs. The writ was

directed to Mr. Bowen, as trustee, and Sarah F. Adams and Laura S. Adams. They had gone into possession under these chattel mortgages, and the officer executing the writ was unable to find all the goods described in the affidavit and writ. An inventory and appraisal was made of the goods actually replevied and turned over to the plaintiffs, from which it appears that the value of such part was only $64.70. The writ and affidavit alleged the value of the whole goods at the sum of $115.50. No evidence is given as to the value of the goods described in the writ and not found, except such as may be inferred from the fact that E. T. Adams & Co. had purchased the identical goods about a month previous, and had agreed to pay therefor the sum of $115.50. How. Stat. § 8964, provides that in the following cases, if the plaintiff recover judgment by default, upon confession, verdict, demurrer, or otherwise, in any action or proceeding at law, he shall recover his costs:

Subd. 4. "In all actions of replevin, and in all actions for the recovery of any debt or damages, or for the recovery of penalties or forfeitures, in all cases where the court has exclusive or concurrent jurisdiction."

The facts of this case take it out of the rule laid down in *Kittridge v. Miller*, 45 Mich. 478. The action was replevin for a fox-skin. Mr. Justice CAMPBELL said:

"This case, which involved only one dollar and a half, was brought in the circuit court, and not before a justice. While the former may have jurisdiction, it certainly ought not to have it, and probably was not intended to have it."

Chief Justice MARSTON said:

"I am also of opinion that the circuit court had no jurisdiction of the case, because of the amount involved therein."

It is said that the present case involved less than $100. This is not true. The affidavit, writ, and declaration all

allege the value at $115.50; and the evidence tended to show the value of the whole goods at that amount. The plaintiffs, under the circumstances, had a right to rescind the sale and take their goods. The defendants had no greater rights in them than would E. T. Adams had the writ been brought against him. If the whole goods had been found, no question could have arisen about who was entitled to the costs of the suit, as the value was above $100. The circumstances were such as justified the court, under this statute, in awarding the costs to the plaintiffs.

For the error pointed out the judgment must be reversed, with costs, and new trial ordered.

CHAMPLIN, C. J., and MORSE, J., concurred with LONG, J.

GRANT, J. I agree with my brethren that the court erred in permitting the witness Pungs to read to the jury the copy of the statement made by Adams to himself. The copy was not admissible in evidence, because the loss of the original had not been shown. The witness had no recollection of the particulars of the statement, and could not testify to them except by reading what he took down at the time. If the witness had produced the original statement, and had sworn that he took down correctly, at the time, what Adams had told him, but that he could not remember it, and could only tell it by reading the statement, I think the statement would have been admissible. In such case, unless the statement can be admitted, or the witness allowed to read it, the testimony must be excluded, because the witness has no independent recollection of what was said.

If, at the time a statement is made, particularly where it involves figures, a person makes a memorandum of those figures, he would hardly be entitled to credence if he should swear that he recollected the figures independ-

ently of the memorandum.    The rule that he may examine the memorandum, and then must swear that he has a recollection of them independent of the memorandum, before he can testify to them, is not, in my judgment, founded upon reason or sound policy.    To exclude the statement is to exclude the most reliable evidence, and results either in excluding the evidence altogether, or in placing it before the jury in such a way as to weaken, if not destroy, its value.

CAHILL, J., concurred with GRANT, J