## McGEE *v.* BAUMGARTNER.

121 · 287
f122 559

121 287
125 199

121 287
s80NW 21

121 287
s80NW 21
e131 ⁶527
j131 ⁶531
ʲ131 ⁶532
121 287
136 ³112

121 287
f148 ⁴334
148 335
f148 ⁵672

1. LIBEL—PRIVILEGED COMMUNICATIONS—MALICE.

Defendant, after a conversation with G., who had lost a position with the employer of plaintiff's husband through the efforts, as G. believed, of plaintiff's husband, reduced to writing certain charges of misconduct made by G. against plaintiff and her husband, in order that they might be considered by the employer, with the result that plaintiff's husband was discharged. The acts of misconduct were set forth as having occurred, one two years, and the other seven months, before the writing was made. The allegations being charged as libelous, defendant filed with his plea a notice that the matters were of common report, and had previously often come to his knowledge; but on the trial he testified that, although he was a near neighbor of plaintiff, he had heard nothing derogatory to her character prior to his being called upon to write out the charges. *Held,* that a finding that defendant acted maliciously, being actuated by a desire to assist G. in procuring the discharge of plaintiff's husband, and not as a voluntary and disinterested amanuensis, was based on sufficient evidence.

2. SAME—INJURY TO FEELINGS—SPECIFICATION OF DAMAGES.

In an action for libel, where there is no testimony or claim of damages to plaintiff's property, business, trade, profession, or occupation, there is no occasion to instruct the jury to specify in their verdict separately, as required by Act No. 216, Pub. Acts 1895, § 2, the amount awarded for damages to feelings and the amount awarded for other damages.

3. SAME—INSTRUCTIONS—FAILURE TO REQUEST.

Defendant in an action for libel cannot complain on appeal that the court failed to instruct the jury to specify in their

verdict separately, as required by Act No. 216, Pub. Acts 1895, § 2, the amount awarded for damages to feelings and the amount awarded for other damages, where he made no request for such instruction.

4. SAME—DAMAGES TO REPUTATION—CONSTITUTIONAL LAW.
    The right to recover in an action of libel for damages to reputation cannot be abridged by statute. *Park* v. *Free Press Co.,* 72 Mich. 560, followed.

5. SAME—SPECIFIC ISSUES—EVIDENCE.
    In a libel, where specific acts of disgraceful conduct are charged, evidence of other acts is inadmissible. *Proctor* v. *Houghtaling,* 37 Mich. 41, followed.

6. WITNESSES—SURPRISE—ATTACKING CREDIBILITY.
    Where defendant, claiming to have been taken by surprise by the testimony of one of his witnesses contradictory of an affidavit previously made for defendant's attorney, which affidavit the witness claimed was obtained by threats, was permitted to show that no threats nor force were used, he has no occasion to complain because he was not permitted to proceed further in attacking the credibility of the witness.

Error to Wayne; Carpenter, J. Submitted June 9, 1899. Decided September 19, 1899.

Case by Rosann McGee against Anthony Baumgartner, Edward Sullivan, and Moses Giller for libel. From a judgment for plaintiff, defendant Baumgartner brings error. Affirmed.

This is an action of libel. The libelous article complained of consists of a letter written by defendant Giller to Rev. Frederick J. Baumgartner, a brother of defendant Baumgartner, and secretary and chancellor of the diocese of the Romon Catholic Church of Detroit. It is unnecessary to state the substance of the article. This is fortunate, for the charges are of too vile a character to put in print, unless absolutely necessary to an understanding of the case. Giller is a son-in-law of defendant Baumgartner, and Sullivan is the brother of the plaintiff. Plaintiff and her husband were, and had been for some time,

employed in Mt. Olivet Cemetery by the superintendent, and occupied a house belonging to the cemetery company. Sullivan and Giller had both been discharged by the superintendent of the cemetery. Giller and Sullivan went to defendant B. and made a statement to him of the acts of plaintiff, McGee, and her husband, mentioned in the letter, and requested him to accompany them to the bishop's residence, and introduce them, so that they could bring the misconduct of the plaintiff and her husband before the bishop. The three went together to the bishop's residence, and defendant B. introduced the others to his brother, the chancellor, in the absence of the bishop. Giller and Sullivan then stated to the chancellor the substance of their complaints. He advised them to put it in writing, so that it might be placed before the proper authorities in a proper manner. They went away. Defendant B. then wrote the letter to be signed by Giller. Giller and Sullivan could not write, and defendant B. signed Giller's name to the letter, and, after keeping it some days, took it to the chancellor, and it was laid before the board of trustees. McGee was discharged. Plaintiff recovered a verdict and judgment for $1,000, which, upon a motion for a new trial, was reduced to $500.

*William Look* and *Ira G. Humphrey*, for appellant.

*Edwin Henderson*, for appellee.

Grant, C. J. (*after stating the facts*). 1. The circuit court instructed the jury, at the request of defendant's counsel, that the letter was a privileged communication, presumed to have been written without malice; that plaintiff could not recover against defendant B. unless they were satisfied, not only of the falsity of the contents of the letter, but that B. was actuated by malice or ill-will towards plaintiff when he wrote the letter; that, unless the statements in the letter were both false and expressly malicious on the part of B., they should acquit him; that

if the jury found that B. believed the statements made to him by Giller and Sullivan to be true, and merely acted as a penman to put them in writing to be laid before the chancellor, in order that an investigation might be made, they should acquit him, unless they found that he was actuated at the time by malice towards plaintiff or her husband; and that if they found that he acted in good faith in writing the letter, believing that the statements made to him by Giller and Sullivan were true, and that he had no malice or ill-will, they should acquit. The only objection raised to these instructions is that there was no testimony to show malice on the part of B., and therefore the court should, as requested, have directed a verdict for him. There is testimony tending to show that B. knew that Giller and Sullivan were not acting in the interest of good morals, but were taking this course because they attributed their discharges to plaintiff's husband, and desired to "get even" with him by procuring his discharge. B. lived, and had for some time, a near neighbor to Mr. and Mrs. McGee. He testified that he had heard nothing and knew nothing against their characters until these charges were made by Giller and Sullivan. With his plea he served notice of justification, and "that the matters alleged as libelous in said declaration were of common report, and that such reports had previously and often come to the knowledge of said defendant, and that said words were and are true as therein set forth." He also knew that one of the disgraceful acts charged was alleged to have been committed two years, and another seven months, before they had spoken to him about them. If the charges made were true, the jury would naturally infer that those living in such close proximity to the plaintiff as did the defendant B. would have heard of them. This and other testimony was sufficient to authorize the jury in finding that B. did not act merely as a voluntary and disinterested amanuensis for Giller and Sullivan, and that he was actuated by a desire to assist Giller and Sullivan in their efforts to secure the discharge of Mr. McGee. The in-

structions were as favorable as the defendant was entitled to.

2. The court did not instruct the jury to specify the amount awarded for damages to feelings separately from the amount awarded for other damages, under section 2, Act No. 216, Pub. Acts 1895. There are two answers to this contention: (1) Defendant made no request for compliance with this statute. The point was not raised upon the trial. It is too late to raise it now. *Mahiat* v. *Codde*, 106 Mich. 387, and authorities there cited. (2) The object of this statute was to separate damages for injured feelings from those to property, business, trade, profession, or occupation, mentioned in the first section of the act. There was no testimony or claim of damage to plaintiff's property, business, trade, profession, or occupation.

3. Error is assigned upon the instruction that the jury might find damages to plaintiff's reputation. The point is that the act above cited prohibits recovery for damages to one's reputation. Whether this be so or not, we need not discuss. If it does, the act in this respect is clearly unconstitutional, and the point is expressly ruled against the defendant by *Park* v. *Free Press Co.*, 72 Mich. 560 (1 L. R. A. 599, 16 Am. St. Rep. 544). The constitutionality of the act is assailed upon other grounds. A determination of that question is unnecessary, and we decline to discuss it.

4. Defendant alleges that the court erred "in excluding testimony of alleged orgies of plaintiff, and of other complaints against her, which have affected her character and lessened the damages." Counsel cite no authority in support of this proposition. Such testimony was condemned by this court, and the reason of its inadmissibility shown, in *Proctor* v. *Houghtaling*, 37 Mich. 41.

5. Defendant claimed to have been taken by surprise by the testimony of one of his own witnesses. He then submitted to her an affidavit, which she had made in writing, contradictory of her statements upon the stand. Defendant was permitted to put leading questions to her in regard

to this affidavit. She admitted having made the affidavit, but said it was obtained from her by threats in the office of the defendant's attorneys. The witness who drew the affidavit was then called, and asked to state specifically the language used by the witness when the affidavit was prepared. Plaintiff's counsel objected, for the reason that it was an attempt to impeach the defendant's own witness. The court at first sustained the objection, but finally permitted the witness to testify as follows:

"*Q.* State whether or not there were any threats, any force, used, or any threats or any offers of reward for making this statement.

"*A.* Nothing whatever.

"*Q.* State whether or not you said to her that she would be well paid if Mr. Baumgartner could win his case.

"*A.* I never said anything of the kind.

"*Q.* Who was with you when you wrote this?

"*A.* Mr. Sullivan.

"*Q.* Where was Mr. Baumgartner?

"*A.* He was downstairs.

"*Q.* Did you attempt in any way to frighten Miss Wincke?

"*A.* Not in the least."

We think the court went far enough to permit defendant to attack the credibility of his own witness.

The judgment is affirmed.

The other Justices concurred.