### HILEMAN *v.* INDREICA

#### OPINION OF THE COURT

1. WITNESSES—REFRESHING RECOLLECTION.

The rule, that a party who calls a witness, and is taken by surprise by his unexpected adverse testimony, may be permitted to interrogate him in respect to declarations and statements previously made by him which are inconsistent with his testimony, for the purpose of refreshing his recollection, and inducing him to correct his testimony, or explain his apparent inconsistency, and for such purpose his previous declarations may be repeated to him, and he may be called upon to say whether they were made by him, should startle no one.

2. WITNESSES—EXAMINATION—IMPEACHMENT—MEMORY REFRESHMENT.

The purpose of all witness-examination is that of getting at the truth, and the rule which denies to the voucher of credibility all right of impeachment should not be stretched into denial of his right to call to the attention of the witness the latter's previous statements, writings, affidavits or depositions which,

---

\* Continued from volume 384 Mich.

#### REFERENCES FOR POINTS IN HEADNOTES

[1–3, 6–9, 17–20, 22–24, 28–30] 58 Am Jur, Witnesses §§ 702, 703.
The scope and limits of a cross-examination. 21 L Ed 707.
[4, 5] 45 Am Jur 2d, Intoxicating Liquors §§ 576, 578–581.
[10] 4 Am Jur 2d, Appeal and Error § 397 *et seq.*
[11] 20 Am Jur 2d, Courts § 54.
Power and duty of court to keep its files and records free from scandalous matter. 111 ALR 879.
[12] 4 Am Jur 2d, Appeal and Error § 515 *et seq.*
[13] 58 Am Jur, Witnesses § 623.
[14] 58 Am Jur, Witnesses § 643.
[15] 23 Am Jur 2d, Depositions and Discovery §§ 103, 104.
58 Am Jur, Witnesses §§ 771, 774, 781.
[16] 58 Am Jur, Witnesses §§ 771, 798 *et seq.*
[21] 58 Am Jur, Witnesses § 674 *et seq.*
[25] 58 Am Jur, Witnesses § 675.
[26] 58 Am Jur, Witnesses §§ 778, 779.
[27] 58 Am Jur, Witnesses § 792 *et seq.*

upon the face or faces thereof, are apparently inconsistent with his trial testimony; the purpose and object being that of memory refreshment.

3. WITNESSES—REFRESHMENT OF MEMORY—DEPOSITIONS—DISCRETION.

The rule relating to the refreshment of a witness' memory is largely one of judicial discretion; yet, that discretion should be inclined toward properly controlled confrontation of the witness with his seemingly inconsistent recollection which upon oath has been recorded for depositional purposes.

4. INTOXICATING LIQUORS—DRAMSHOP ACT—DEGREE OF INTOXICATION —GIST OF ACTION.

The degree of deceased's intoxication while in a bar was the triable issue under the dramshop statute; the gist thereof being the selling or furnishing of intoxicants to a person who is at the time intoxicated (MCLA § 436.22).

5. INTOXICATING LIQUORS—DRAMSHOP ACT—DEGREE OF INTOXICATION —WITNESSES.

The fullest of permissible examination into the question of the degree of deceased's intoxication was in order at a trial under the dramshop act, when the one witness who knew most was on the stand (MCLA § 436.22).

6. WITNESSES—REVIVAL OF MEMORY—DEPOSITIONS—INTOXICATING LIQUORS—DRAMSHOP ACT.

The situation, at a trial under the dramshop act, became right for legitimate revival of the former memory of plaintiff's witness by resort to her deposition, where the deposition made a much better case for plaintiff, on the issue of amount and extent of drinking of intoxicants by deceased while in a bar and of the barkeeper's knowledge of his condition, than did the trial testimony given by the witness.

7. WITNESSES—MEMORY REFRESHMENT—DISCREDITING WITNESS.

The usefulness of the memory refreshment rule would not be impaired, if the incidental result of such an inquiry would tend to discredit a party's witness.

8. WITNESSES—MEMORY REFRESHMENT—IMPEACHMENT.

Freely applying the rule of memory refreshment of a witness is better than to let the cry of impeachment cripple that rule.

9. WITNESSES—MEMORY REVIVAL—DISCRETION—SEPARATE RECORD.

Refusal of trial judge to permit plaintiff's counsel to complete memory-refreshment interrogation of his witness by reference

to her deposition was an abuse of discretion reposed by law when the objection made thereto was that plaintiff's attorney was attempting to impeach his own witness, and plaintiff's repeated motion for leave to make a separate record should have been granted (GCR 1963, 604).

10. APPEAL AND ERROR—SEPARATE RECORD.

The instance is rare indeed where a trial judge is justified in refusing leave to make a separate record under the court rule and that is especially so in these days of appeal of right for nearly all types of cases, since appellate courts manifestly need such separate records for proper appraisal on review of that which has been denied in open court (GCR 1963, 604).

11. COURTS—RECORD.

Judicial denial of a litigant's customary right in a court of record to record anything, no matter how quaint, strange, or uncouth it may be, had best be supported by the persuasion of most compelling reasons and a judge, bent on any such denial, should himself record with detail a "good cause" explanation of such unusual action.

12. APPEAL AND ERROR—RECORD—WITNESSES—IMPEACHMENT.

Reversible error resulted where trial judge saw only an attempt to impeach one's own witness and, on that assumption, refused to permit the making of a record for appellate purposes.

13. WITNESSES—IDENTIFICATION OF DOCUMENTS—DIRECT EXAMINATION—CROSS-EXAMINATION.

Any document or thing which counsel proposes to employ in the examination or cross-examination of a witness needs to be marked for identification.

14. WITNESSES—DOCUMENT—EXAMINATION OF WITNESS.

A witness on the stand is entitled to read, or have contextually read to him, whatever document is to be the subject of intended examination by counsel.

DISSENTING OPINION

T. E. BRENNAN, J.

15. WITNESSES — IMPEACHMENT — DEPOSITION — EVIDENCE — READING TO JURY.

*A deposition properly used to impeach a witness is admissible in evidence for that purpose and, being admissible in evidence, it can and should be read to the jury.*

16. Witnesses—Civil Action—Credibility—Impeachment—Prior Contradictory Statements.

*A party in a civil action vouches for the credibility of his own witnesses and may not impeach them by showing the jury that such witnesses have made prior contradictory statements.*

17. Witnesses—Recollection of Witness—Deposition—Impeachment.

*The process of refreshing a witness' recollection by use of his prior deposition is not a little bit of impeachment, or an exception to the impeachment rule.*

18. Witnesses — Deposition — Refreshing Recollection — Jury's Presence.

*A prior deposition, used to refresh a witness' recollection, may be shown to the witness, or if he cannot read, the deposition may be read to him but out of the hearing of the jury.*

19. Witnesses—Refreshing Memory—Laying Foundation—Memoranda—Discretion.

*In the absence of circumstances already appearing of record, it is always necessary to lay a foundation for the use of a memorandum for refreshment of a witness' memory by making it to appear, as a condition precedent, that the memory of the witness needs stimulating and the manner of using this memoranda is left largely to the discretion of the trial judge.*

20. Witnesses — Refreshing Memory — Memoranda — Evidence — Admissibility.

*A memorandum, used to refresh a witness' memory, is not admissible in evidence when the witness, after examining the memorandum, finds his memory so refreshed that he can testify from recollection independently of the memorandum as there is then no reason or necessity for the introduction of the memorandum.*

21. Witnesses—Criminal Law—Res Gestae Witnesses—Impeachment.

*The people in a criminal prosecution, being obliged to call all* res gestae *witnesses, are permitted to impeach them.*

22. Witnesses—Recollection of Witness—Memoranda—Evidence—Admissibility—Direct Examination.

*A memorandum used in reviving a present recollection of a witness, may not be laid in evidence as a part of the direct*

*examination, since it is the recollection, not the memorandum, which is the evidence.*

23. WITNESSES—REFRESHING RECOLLECTION—WRITINGS—EVIDENCE—ADMISSIBILITY.

*A witness may refresh his recollection from a writing which is not in evidence but, if after reading the writing, he cannot testify from a refreshed recollection, the writing is not per se admissible.*

24. WITNESSES—DEPOSITIONS—REFRESHING RECOLLECTION.

*There was no basis whatever to use the deposition of a witness for the purpose of refreshing her recollection where the witness never admitted to any failure of memory.*

25. WITNESSES—PRIOR INCONSISTENT STATEMENT—EVIDENCE—IMPEACHMENT—CREDIBILITY.

*Evidence of a prior inconsistent statement, when admissible for the proposition of impeaching the credibility of a witness, does not constitute substantive evidence of the matters contained in the prior statement.*

26. WITNESSES—PRIOR INCONSISTENT STATEMENT—IMPEACHMENT—CREDIBILITY—EVIDENCE—HEARSAY.

*Evidence of a prior inconsistent statement, when received to impeach the credibility of a witness, is admissible and not hearsay, because it is received for the purpose of proving that the prior statement was made and not for the purpose of proving the truth of the prior statement.*

27. WITNESSES—PARTY'S OWN WITNESS—CIVIL ACTION—IMPEACHMENT.

*A party in a civil action may not impeach his own witness, even if that witness appears hostile or changes his testimony.*

28. WITNESSES—REFRESHING MEMORY—FORMER TESTIMONY.

*Unless a witness needs to have his memory refreshed, there is no occasion to show him his former testimony.*

29. WITNESSES—REFRESHING MEMORY—FORMER TESTIMONY—JURY'S PRESENCE.

*A witness who needs to have his memory refreshed may be shown his former testimony, or it may be read to him out of the presence of the jury.*

30. WITNESSES—DEPOSITION—READING TO JURY—REFRESHING MEMORY—OBJECTION.

*Trial court should be held not to have erred in sustaining defendant's objection to the use of a deposition of plaintiff's witness by way of plaintiff's counsel reading it in the presence of the jury, in order to refresh the memory of that witness.*

Appeal from Court of Appeals, Division 2, Lesinski, C. J., and Levin and Andrews, JJ., affirming Oakland, Clark J. Adams, J. Submitted November 9, 1970. (No. 8 October Term 1970, Docket No. 52,429.) Decided June 1, 1971.

15 Mich App 662 reversed.

Complaint by Dorothy H. Hileman for herself and as guardian of George Gordon Hileman, Jr., and Richard G. Hileman, minors, against Romulus Indreica and Augustin Vincent, and Buckeye Union Casualty Company for a violation of the dramshop act which resulted in the wrongful death of plaintiff's husband. Verdict and judgment for defendants. Plaintiff appealed to the Court of Appeals. Affirmed. Plaintiff appeals. Reversed and remanded for new trial.

*Welday, Goldstone, Boila & Ott* (*Michell L. Bacow,* of counsel), for plaintiff.

*Metry, Metry, Sanom, Ashare & Goldman* (by *Dennis M. Matulewicz*), for defendants on appeal.

PER CURIAM. This is an action under the dramshop act (CLS 1961, § 436.22 [Stat Ann 1970 Cum Supp § 18.993]), brought by the surviving widow of one Hileman on behalf of herself and his minor

children. The jury's verdict was no cause. Division 2 affirmed (15 Mich App 662). We granted leave (383 Mich 751) to examine anew what once was well settled evidentiary trial practice (*Bresch v. Wolf* [1928], 243 Mich 638; *Higdon v. Kelley* [1954], 339 Mich 209) but now seems to be GCR-muddled (*Ruhala v. Roby* [1967], 379 Mich 102).[1]

Today's specific question arises during the direct or redirect examination of a witness whenever the examining counsel seeks to refresh or revive the witness' memory by resort to some statement or document, the authenticity of which has been traced to the witness.

We examine first a venerably authoritative text and some of our own earlier cases in such regard. Jones tells us (5 Jones, Blue Book of Evidence [Bancroft-Whitney edition of 1914], headed "§ 883 [886]. *Other modes of refreshing memory—Use of memoranda as evidence.*" pp 330, 331):

"The expression 'refreshing the memory' is generally taken to refer to the stimulation of a witness' memory by some written document such as we have hereinbefore particularly discussed. But it may be refreshed by other modes than the use of memoranda in writing. While a party cannot, as a rule, cross-examine his own witness, if a witness has given an ambiguous or indefinite answer, or if his memory is at fault, the court, in the exercise of a proper discretion, may allow verbal inquiry as to statements or circumstances which may tend to enable the witness to recollect more clearly the fact sought to be proved. It not infrequently happens

---

[1] *Ruhala v. Roby,* precedentially inconclusive for want of five endorsers (*Breckon v. Franklin Fuel Company* [1970], 383 Mich 251, 278, 279), presented a facet of the same question as now at bar, that is, the extent to which the pretrial deposition of a witness called to the stand may be used in examining or cross-examining that witness.

that a witness, under the embarrassment of an examination, forgets, or omits to state, facts within his knowledge, or is disinclined to disclose fully and definitely what he knows. Ample opportunity should be afforded for the correction of such mistakes and omissions, and for eliciting fully the facts that are material to the issue. The recollection of the witness may be so refreshed by directing his attention to a former conversation or declaration as to cause him promptly to correct his testimony or explain the apparent inconsistency. 'A party who calls a witness, and is taken by surprise by his unexpected adverse testimony, may be permitted to interrogate him in respect to declarations and statements previously made by him which are inconsistent with his testimony, for the purpose of refreshing his recollection, and inducing him to correct his testimony, or explain his apparent inconsistency, and for such purpose his previous declarations may be repeated to him, and he may be called upon to say whether they were made by him.' The purpose for which the questions are put—to refresh the witness' memory—should clearly appear."

This rule should startle no one. The purpose of all witness-examination is that of getting at the truth, and the rule which denies to the voucher of credibility all right of impeachment should not be stretched into denial of his right to call to the attention of the witness the latter's previous statements, writings, affidavits or depositions which, upon the face or faces thereof, are apparently inconsistent with his trial testimony; the purpose and object being that of memory refreshment as set forth by Jones. Among our cases wherein this evidentiary practice has been upheld, on direct examination as well as cross-examination, are *Beaubien* v. *Cicotte* (1864), 12 Mich 459; *Stone* v. *The Standard Life & Accident Insurance Company*

(1888), 71 Mich 81; *Prentis* v. *Bates* (1891), 88 Mich 567; *Pickard* v. *Bryant* (1892), 92 Mich 430; *People* v. *Case* (1895), 105 Mich 92; *People* v. *Palmer* (1895), 105 Mich 568; *People* v. *O'Neill* (1895), 107 Mich 556; *Dillon* v. *Pinch* (1896), 110 Mich 149; *People* v. *Johnson* (1915), 186 Mich 516; *Bresch* v. *Wolf, supra; Mitchell* v. *DeVitt* (1946), 313 Mich 428, and *Higdon* v. *Kelley, supra.*

Admittedly, as in *Bresch,* the rule relating to the refreshment of a witness' memory is largely one of judicial discretion. Yet as developed some 26 years later in *Higdon,* that discretion should be inclined toward properly controlled confrontation of the witness with his seemingly inconsistent recollection which upon oath has been recorded for depositional purposes. Consider the adoption, in *Higdon,* of quotations taken from *Hickory* v. *United States* (1894), 151 US 303, 309 (14 S Ct 334, 38 L Ed 170) and *Bullard* v. *Pearsall* (1873), 53 NY 230. Our conclusion was (*Higdon* at 219):

"This Court has held that prior statements may not be used when the sole purpose in their use is to impeach the credibility of a party's own witness. See *Farthing* v. *Hepinstall* [1928], 243 Mich 380. But when the purpose of referring to the prior statement is to refresh the memory of a witness or to induce the witness to explain an apparent inconsistency, the prior statement may be referred to during direct examination."[2]

The factual setting of present review is unique. The witness on the stand, called there by plaintiff,

---

[2] Note that *Higdon* also was a dramshop case. Note too—from *Higdon*—that the previous statement of the witness Cubley was *not* under oath; whereas in this case of Hileman the previous record sought to be utilized for refreshment (not spirituous of course) was made under oath, with opponent counsel present and participating, and then was attested by the court reporter for depositional purposes. As such that previous record became "original evidence for

was a Mrs. Hazel Burns. A year prior to the trial she had deposed in detail with respect to the pleaded issue of unlawful furnishing of intoxicating liquor to an allegedly intoxicated person, that is, to this plaintiff's since deceased husband. No witness possibly could be in a better position than she to relate *all* of the facts upon which plaintiff's charge of actionable violation of the dramshop act might turn. Furthermore, she herself had commenced a separate action against the *same* defendants, under the *same* statute, for personal injuries arising out of the *same* events. That action was pending at the time of her pretrial deposition. Of it, more later.

The summary disposition in circuit of plaintiff's attempt at trial to employ Mrs. Burns' deposition, and then of plaintiff's effort to make a separate record by examining Mrs. Burns according to the deposition (see GCR 1963, 604), suggests that the trial judge did not read the deposition to determine the posed question of inconsistency. Instead, and erroneously in our view, the judge looked upon the effort of counsel solely as an attempt to *impeach* Mrs. Burns, or as an effort to have her judged "hostile." His final ruling:

*"The Court:* This matter has been ruled upon by the court once, but I will rule again. This motion is a motion to utilize the deposition previously taken of the witness Hazel Burns. Now it's an accepted rule of evidence in this State that a witness cannot—that a party cannot impeach his own wit-

the party against whom he is sworn" (*Lightfoot* v. *The People* [1868], 16 Mich 507, 513).

Justice CAMPBELL wrote *Lightfoot* for the Court. He considered at length the *right* way to cross-examine a witness by reference to the latter's deposition. We apprehend that that *right* way applies equally when the object is refreshment of the memory of a previously deposed witness.

ness, and that is exactly what you are attempting to do by this use of the deposition.

"The rule which you quoted, Mr. Goldstone, is not saying what you said it said. It simply says if the witness' answers indicate hostility, the court should be liberal in permitting counsel to examine into the relationship between the witness and the party to show that she had become unfriendly, but this does not mean that you can impeach your own witness by the use of the deposition in this cause.

"Now this rule that you quote as to the right to use the deposition is a rule which is applicable within the accepted rules of evidence. I repeat, one of the accepted and longstanding rules of evidence is that you cannot impeach your own witnesses. Now one final observation. Much has been made in open court about the inconsistencies between what Mrs. Burns may have said on the witness stand, and that which she said in the deposition. This court has observed no great inconsistencies. She has admitted on the record in open court this man was under the influence of intoxicating liquors. There is nothing to indicate hostility as a matter of fact, and even if hostile, the most the court could do would be to permit you to show the relationship between her and the parties.

"The motion to utilize the deposition is denied. We will not permit a separate record and we will now proceed before the jury.

"I should add, Mr. Bacow, continued reference to this transcript may result in a mistrial.

"*Mr. Bacow* [attorney for plaintiff]: The court has ruled and we will obey the ruling of the court, your Honor."

We have read the deposition. It consists of 48 pages of thoroughgoing inquiry into the events of the fatal evening, from the time the divorce-seeking Mr. Hileman called on divorced Mrs. Burns at her home to the end of Mr. Hileman's final ride as driver

of an automobile (the result for him being that last horizontal ride each of us is due to take).

Mr. Hileman and Mrs. Burns had been "keeping company" for some three months. From Mrs. Burns' home they proceeded to the defendants' bar, known as New Hudson Inn. There without doubt Mr. Hileman became intoxicated, certainly in some degree, as two to three hours of drinking went on. He started things by ordering a round "for the house," utilizing a "twenty" from his hundred dollar bankroll. The *degree* of his intoxication while in the bar was of course the triable issue under the statute; the gist thereof being the selling or furnishing of intoxicants to a person "who is at the time intoxicated."

The fullest of permissible examination into that question was in order at the trial, when the one witness who knew most was on the stand. However, before the jury, her direct examination upon the question of degree of intoxication was stopped abruptly. Here are the continuously contextual circumstances (direct examination, continued):

"*Q*. What did Mr. Hileman do during all the time you were in the bar?

"*A*. Well, he went there to discuss business with Gus and I wasn't prying into his affairs any more than I had to. I know he was engrossed in a conversation with Gus all the time that we were there.

"*Q*. How about his drinking during that time?

"*A*. During the course of the time we were there, he was drinking slowly.

"*Q*. Continuously?

"*A*. Between conversation.

"*Q*. What was Mr. Hileman drinking again?

"*A*. He drank Cutty Sark and the small Budweiser. As far as I know, that's all he ever drank.

"*Q.* Have you any idea how many drinks Mr. Hileman had that evening? Have you any idea how many drinks he had that evening?

"*A.* I wouldn't say any more than six. It could have been less, five.

"*Q.* Any more than six?

"*A.* I don't think he did, no.

"*Q.* Well, Mrs. Burns, do you recall my asking on that same day, on October 28, 1965, my asking you how many drinks he had had that evening?

"*Mr. Baun* [attorney for defendants]: What page are you on in the deposition?

"*Mr. Bacow:* Page 7.

"*Q.* Do you recall this question: 'Any idea how many he drank' and an interjection by Mr. Baun— 'How many what,' '*Q.* Of these drinks that he drank? *A.* I can't say how many in the course of two-and-a-half hours. He had several. *Q.* Now— *A.* He was drinking all the time we were there. I do know that. As far as counting how many, I couldn't tell.' Was that question asked to you and did you make that answer?

"*A.* Yes, it was and I remember answering you.

"*Q.* So he was drinking all the time you were there. Again, this question—by the way, who paid for these additional drinks, if you know?

"*A.* I couldn't name the people that paid for them. I know when Gordie ordered a round for the people that were in there, there were in return a couple of drinks sent back to us.

"*Q.* Just a couple of drinks?

"*A.* A couple, three. I don't know. I wasn't counting, really.

"*Q.* Let's go back again to that same day. Page 7, '*Q.* All right. Who paid for these drinks, if you know? *A.* Well, like I say, Gordie bought a round of drinks for everybody in the house and after that, then I don't know. There were drinks sent back to us, you know, one drink right after another, and

who paid for them, I couldn't say.' Do you remember that question and answer?

"*Mr. Baun:* If Mr. Bacow is trying to impeach his own witness, I think there are legal points involving Mrs. Burns here as your witness. She gave you an answer previously to your question. As I understand now, you are not satisfied with her previous answers. This is in the nature—

"*Mr. Bacow:* That is correct.

"*Mr. Baun:* This is an attempt to impeach his own witness.

"*The Court:* This is a proper objection."

Turning now to our reading of the deposition. It made a much better case for plaintiff, on the issue of *amount* and *extent* of drinking of intoxicants by Mr. Hileman while in the bar and of the barkeeper's *knowledge* of his condition, than did the foregoing trial testimony given by Mrs. Burns. The situation then became right for legitimate revival of Mrs. Burns' former memory by resort to her deposition. That was particularly true when as quoted above the defendants' objection—of impeachment—was upheld. The reason lies with facts dealt with in the deposition which the trial judge and Division 2 did not consider, so far as the trial and appellate records tend to disclose.

Noted above is the fact that Mrs. Burns had commenced a separate dramshop action, against the same defendants, for personal injuries arising out of Mr. Hileman's accident after the two with Mr. Hileman driving had left the defendants' bar. There can be no doubt, Mrs. Burns' complaint in such regard considered, that her injuries were both serious, and permanent; also that she herself had charged these defendants exactly as this plaintiff had charged against them. Her complaint proceeded:

"5. On or about January 31 [*sic*], 1964, said defendants Indreica and Vincent, their agents and servants, unlawfully sold, gave or otherwise furnished to the decedent George Gordon Hileman, intoxicating liquors while he was already intoxicated or which caused or contributed to his intoxication."

It was manifestly to Mrs. Burns' interest, when she deposed in October of 1965, to make out a better case of actionable violation of the dramshop act than when she was called to the stand a year later by plaintiff. Something had intervened. That something appeared of record in the circuit court.

The instant action was commenced in January of 1965. Mrs. Burns' action was commenced in November of that year. Mrs. Burns had been deposed, by the present plaintiff, in October of that year. The defendants (both actions) later moved to consolidate. The two actions were consolidated in April of 1966. Previous to the day on which the instant trial commenced (October 21, 1966) counsel for Mrs. Burns and present defense counsel settled her case and stipulated to discontinue it with prejudice. Discontinuance was ordered accordingly on the day of commencement of trial of the instant action.

All these facts were known to the trial judge, he having signed the order of discontinuance of Mrs. Burns' action and then having opened the trial of this consequently detached action. Viewing them together, we think he should have permitted counsel —before the jury—a complete interrogation of Mrs. Burns for memory revival by reference to her deposition. She may indeed have been able to provide satisfactory explanations, for instance of the difference between her trial observation that Mr. Hileman "was drinking slowly" and "between conversation," and her positively deposed statement (and others

like it) that "He was drinking all the time we were there; I know that."

If the incidental result of such an inquiry would have tended to discredit Mrs. Burns, that would not impair the usefulness of the refreshment rule. See *Higdon, supra* at 217. One reason in particular for our unwillingness to water the stock of the refreshment rule is that, too many times as veteran trial lawyers know, the jury never hears the testimony of a witness, sometimes interested, sometimes disinterested and sometimes one whose knowledge is either crucial or valuable. That is likely to occur when each counsel, known by the other to be possessed of a statement of the witness, waits in vain for opponent counsel to call him to the stand. Then neither counsel wishes to risk the brand of impeacher should he call that witness to the stand, only to learn that the direct examination is turning out contrary to the statement he has in his file. In sum, we hold it better to apply the rule of refreshment freely according to *Higdon's* principles, rather than let the cry of impeachment cripple that rule, as the cry did here.

The foregoing considered, we hold that the trial judge abused the discretion reposed by law when objections as here are made. Further, plaintiff's repeated motion for leave to make a separate record should have been granted. Both the deposition and separate complaint of Mrs. Burns could and rightfully should have been utilized in the course of that which, twice, counsel vainly sought under GCR 1963, 604. For fair discretion the trial judge was just a little too hasty, and too far ahead of what might have been shown, when he found an effort to impeach rather than refresh, and then admonished counsel as he did against any further reference to the Burns deposition. See *ante* at 11.

The instance is rare indeed where the trial judge is justified in refusing leave to make a separate record under Rule 604. That is especially so in these days of appeal of right for nearly all types of cases. Appellate courts manifestly need such separate records for proper appraisal on review of that which has been denied in open court, and that thought prompts still another.

Judicial denial of a litigant's customary right in a court of record to record anything, no matter how quaint, strange, or uncouth it may be, had best be supported by the persuasion of most compelling reasons. The judge, bent on any such denial, should himself record with detail what we are pleased to call a "good cause" explanation of such unusual action. He must realize that the only other remedy available to counsel is the making up of counsel's own record of that which the judge has banned, followed by prompt filing of that record (or tender of filing it) as a part of the clerk's record of the cause.

Here the trial judge has provided nothing which tends to disclose the intent of performing an act of judicial discretion; hence there was no exercise thereof. He saw only an attempt to impeach one's own witness and, on that assumption, refused to permit the making of a record for appellate purposes. The result was reversible error.

Since there is to be a new trial, attention is called to the need for marked identification of any document or thing which counsel proposes to employ in the examintion or cross-examination of a witness; also to this Court's firm commitment to the proposition that a witness on the stand is entitled to read, or to have contextually read to him, whatever document is to be the subject of intended examination by counsel. The rule appears most recently and at

length in *People* v. *Dellabonda* (1933), 265 Mich 486, concluding at 508:

"This court is firmly committed to the doctrine of *Queen's Case,* 2 Brod. & Bing. 284, 286 (129 Eng. Repr. 976), which case is the basis of the rule stated in 1 Greenleaf on Evidence (16th Ed.), § 463, that it would be unfair to cross-examine a witness as to the contents of a writing made by him until the jury were informed of the precise contents of the writing, and thus warned against assuming contradictions that do not really exist and which would also be unfair to the witness because he may have explanations which would not occur to him until his memory had been refreshed by hearing the paper read. *Lightfoot* v. *People* [1868], 16 Mich 507; *Hamilton* v. *People* [1874], 29 Mich 195; *Toohey* v. *Plummer* [1888], 69 Mich 345; *DeMay* v. *Roberts* [1881], 46 Mich 160 (41 Am Rep 154)."[3]

Reversed and remanded for new trial. Costs of all courts to plaintiff.

T. M. Kavanagh, C. J., and Black, Adams, Swainson, and Williams, JJ., concurred.

T. E. Brennan, J. (*dissenting*). My Brother's opinion makes clear the reason for the difficulties in this case. Here, we have a witness by the name of Hazel Burns. Sometime before the trial of this action, Hazel Burns had given a deposition which was favorable to the position of the plaintiff upon the question of the extent of the intoxication of one Hileman on the night of an alleged violation of the dramshop law.

At the trial of the cause, Hazel Burns told her story quite differently, this time minimizing the

---

[3] To this point see the separate opinion of T. M. Kavanagh, J., in *People* v. *Knox* (1961), 364 Mich 620, 636.

decedent's drinking on the night in question. Plaintiff's attorney proceeded to refer to the deposition of Mrs. Burns in the course of his examination of her in the presence of the jury. The procedure was objected to. Plaintiff's counsel sought to have Mrs. Burns declared an adverse or hostile witness. The trial court refused to do so. Ruling that the plaintiff's counsel was using the deposition to impeach his own witness, the trial court sustained the objection of the defendant.

My Brother has cited the case of *Lightfoot* v. *The People* (1868), 16 Mich 507. He tells us that *Lightfoot* shows the right way to cross-examine a witness with reference to the latter's deposition. He apprehends that the same rule applies to the use of a deposition when the object is refreshment of the memory of a previously deposed witness. That suggestion is at odds with all of the authority we are able to find.

*Lightfoot* involved cross-examination and the use of a deposition for the purpose of impeaching a witness. Thus, Mr. Justice CAMPBELL in writing in *Lightfoot* says:

"On the contrary, the deposition relied on to establish a contradiction by the witness is original evidence for the party against whom he is sworn, and should be read in the case as independent testimony. The only occasion for bringing it to the attention of the witness at all, is where the party impeaching him desires to follow up the production, and reading in evidence of the deposition by a further cross-examination concerning the discrepancies and their causes." *Lightfoot* v. *The People, supra,* p 513.

Obviously, where a deposition is properly used to impeach a witness the deposition is admissible in evidence for that purpose. Being admissible in

evidence, it can and should be read to the jury.
But, in this case of Hileman, we are not talking
about impeaching a witness.

The rule remains valid in Michigan that a party
in a civil action vouches for the credibility of his
own witnesses and may not impeach them by show-
ing the jury that such witnesses have made prior
contradictory statements. The process of refresh-
ing a witness' recollection by use of his prior depo-
sition is not, as my Brother seems to suggest, a
little bit of impeachment, or an exception to the
impeachment rule. The authorities are uniform,
that when a prior deposition is used to refresh a
witness' recollection, that deposition may be shown
to the witness, or if he cannot read, the deposition
may be read to him, *but out of the hearing of the
jury*. 58 Am Jur, Witnesses, § 599, p 335. Also,
58 Am Jur, Witnesses, § 596, p 333, § 607, p 337.

"It is only when the memory needs assistance
that recourse may be had to the use of memoranda
or other aids for such purpose. If the witness has
an independent recollection of the facts inquired
about, it is improper to permit him to inspect any
writing or memorandum whatsoever as an aid to
recollection. It is always necessary, therefore, in
the absence of circumstances already appearing of
record, to lay a foundation for the use of a memo-
randum for refreshment of memory. It must be
made to appear, as a condition precedent, that the
memory of the witness needs stimulating. But after
such foundation is laid or appears, there is still
considerable doubt as to precisely the proper method
to be employed. It can only be said that there is no
fixed and invariable rule of thumb, and that the
manner of using memoranda for refreshment of
memory is left largely to the discretion of the trial
court. One of the modes adopted is for the witness
to inspect the document, and, with memory quick-

ened by the suggestions it contains, to speak then without the aid of the writing. In other words, he should then testify as though the circumstance of refreshing his memory had not occurred. When the memoranda are numerous it has been held not to be error for the court to refuse to require the witness to lay the books aside after examining them and before testifying. If the witness cannot read and write, the proper practice is not to read the memoranda to him in the presence of the jury, but to allow him to retire with counsel on each side and to have the memoranda read in his presence without comment. It has been held that a witness, either on direct or cross-examination, may be compelled to inspect a writing if there is reason to believe that thereby this memory may be refreshed." 5 Jones, Commentaries on Evidence (2d ed), § 2382, pp 4681, 4682.

The very section, quoted from the earlier edition of Jones (5 Jones, Blue Book of Evidence, [Bancroft-Whitney edition of 1914], headed "§ 883 [886]"), continuing from where my Brother Black left off, provides, pp 331, 332:

"The question sometimes arises *whether memoranda,* used to refresh the memory, are themselves to be *admitted in evidence.* Of course, the memoranda under discussion in this chapter must *not be confused* with such writings as *books of account* which, on grounds elsewhere discussed, are competent as evidence, when properly verified. *When the witness,* after examining the memorandum, finds his memory so refreshed that *he can testify from recollection,* independently of the memorandum, there is no reason or necessity for the introduction of the paper or writing itself; and it is not admissible. In such case, the jury have no knowledge of the contents of the paper, unless opposing counsel call for such contents on cross-examination. Of course, the cross-examiner has the *right to inspect*

and use the document in order that he may test the candor and credibility of the witness and to show that it could not properly refresh his memory. It is almost needless to add that a statement prepared by the witness cannot be used as evidence of the facts therein set forth. Thus in a personal injury action, a statement by the doctor of the condition of the plaintiff at the time of his attendance, referred to in his deposition as an accurate description of the matters therein set forth, was inadmissible as evidence."

The fifth edition of Jones on Evidence, volume 4, § 971, p 1827, states as follows:

"A question as to the manner of using memoranda of this character is to be determined at the discretion of the court. If the writings are numerous, it is not error for the court to refuse to require the witness to lay the books aside, after examining them, before testifying. If the witness cannot read and write, the proper practice is not to read the memoranda to him in the presence of the jury, but to allow him to retire with counsel for the parties and have the memoranda read in his presence without comment."

Some discussion of the Michigan cases cited by my Brother is in order. *Higdon* v. *Kelley* (1954), 339 Mich 209, is a case in which the trial court permitted, over the objection of the defendant, interrogation of a witness in regard to a former statement made by him. The report of this case does not show whether the interrogation of the witness upon his prior statement was made in the presence of the jury, though a fair reading of the case would suggest that this was probably the fact. The Court relied upon a number of Michigan cases, many of which were criminal cases. It was admitted in *Higdon* that the people in a criminal prosecution,

being obliged to call all *res gestae* witnesses, are
permitted to impeach them.

"It is recognized that in this State in criminal
cases the people may impeach *res gestae* witnesses
whom they are obliged to call.  CL 1948, § 767.40a
(Stat Ann 1953 Cum Supp § 28.980[1]) and *People*
v. *Elco* [1903], 131 Mich 519, 523.  It is to be noted
that in *People* v. *Nankervis, supra,* [(1951), 330
Mich 17] the prior statements were used to refresh
the memory of a witness and such was held not to
amount to impeachment." *Higdon* v. *Kelley* (1954),
339 Mich 209, p 219.

*McGee* v. *Baumgartner* (1899), 121 Mich 287, re-
lied on in *Higdon,* was a case in which the defendant
sought and was permitted some measure of impeach-
ment of his own witness.  The defendant lost the
case and appealed, and *McGee* therefore only stands
for the proposition that the defendant could not
complain, the Court saying at page 292: "We think
the court went far enough to permit defendant to
attack the credibility of his own witness." *People*
v. *Johnson* (1915), 186 Mich 516, was a criminal
case and is inapposite.

*Bresch* v. *Wolf* (1928), 243 Mich 638, refers to
confronting a witness with his former affidavit for
the purpose of refreshing his recollection.  The
report does not demonstrate the manner in which
the confrontation was made and does not therefore
stand for the proposition that the prior affidavit
can be read to the witness in the presence of the
jury.

Michigan cases to the proposition that a party
may not use a prior statement to impeach the cred-
ibility of his own witness are *Farthing* v. *Hepinstall*
(1928), 243 Mich 380, and *Westphal* v. *St. Joseph &
B. H. S. R. Co.* (1903), 134 Mich 239.

Wigmore in his work on Evidence, volume 3 (1970 rev), § 763, p 141, states:

"It follows from the nature of the purpose for which the paper is used (§ 758 *supra*) that it is in no strict sense evidence. In this respect it differs from a record of past recollection (§ 754 *supra*). Nevertheless, though the witness' party may not present it as evidence, the same reason of precaution which allows the opponent to examine it (§ 762 *supra*) allows the *opponent to call the jury's attention* to its features, and also allows the jurymen, if they please, to examine it for the same end. In short, the *opponent,* but not the offering party, *has a right to have the jury see it:*

"Ellenborough, L.C.J., in *Henry* v. *Lee,* 2 Chitty 124, 125 (1810): It is not the memorandum that is the evidence, but the recollection of the witness.

"Gurney, B., in *Gregory* v. *Teverner,* 6 Car. & P. 280, 281 (1833): The memorandum itself is not evidence, and particular entries only are used by the witness to refresh his memory  *  *  * . The defendant's counsel may cross-examine on the entries already referred to, and the jury may also see those entries if they wish to do so.

"Endicott, J., in *Commonwealth* v. *Jeffs,* 132 Mass 5, 6 (1882): The opposite party is entitled to cross-examine the witness in regard to it; and it may be shown to the jury, not for the purpose of establishing the facts therein contained, but for the purpose of showing that it could not properly refresh the memory of the witness.

"That the *offering party* has not the right to treat it as evidence, by reading it or showing it or handing it to the jury, is well established. That the *opponent* may do this, or that the jury may of its own motion demand it, is equally conceded."

82 ALR2d 512, § 23, states the general rule as follows:

" * * * in the case of reviving a present recollection, the memorandum may not be laid in evidence as a part of the direct examination, since it is the recollection, not the memorandum, which is the evidence."

Cited there, is *Battle Creek Food Co.* v. *Kirkland* (1941), 298 Mich 515.

*Caldwell* v. *Bowen* (1890), 80 Mich 382, points out that a witness may refresh his recollection from a writing which is not in evidence, but that if after reading the writing, he cannot testify from a refreshed recollection, the writing is not *per se* admissible.

*Koehler* v. *Abey* (1911), 168 Mich 113, 119, provides as follows:

"The ultimate fact sought to be proved was that an order to guard the planer had been made. The witness testified, in substance, that, with or without the aid of the memorandum, he had no present recollection of the fact.

"If he had testified that the writing refreshed his recollection, so that he had a present recollection of the fact sought to be established, the writing would not have been admissible as further substantive evidence of the fact. In such a case it is the testimony of the witness, the recollection, which is evidence, not the document or writing used to refresh recollection."

*Grusiecki* v. *Jaglay* (1932), 260 Mich 9, 12, holds:

"Defendant alleges error in the court refusing to admit in evidence checks which a witness testified refreshed her recollection. The fact that they refreshed her recollection rendered them inadmissible."

*State* v. *Legg* (1906), 59 W Va 315 (53 SE 545), contains rather a thorough discussion of the dis-

tinction between present recollection refreshed and past recollection recorded, and it is said on page 322:

"The witness, in proceeding to testify from a present or existing recollection, may be unable to do so by unaided mental effort. But by resort to some memorandum or writing his memory may be so stimulated and refreshed as to enable him to recollect the fact, and where this is so, it is not proper to introduce the writing in evidence, or read it in the presence of the jury, because it forms no part of the testimony, being used only for the purpose of aiding the mental effort of the witness to recollect the particular transaction. 'But since, in Lord Ellenborough's words, "It is not the memorandum that is the evidence, but the recollection of the witness," the party whose witness uses it has no right to have it read or handed to the jury; it is only the opponent who wishes to do this in case he wishes to cast doubt on the reality of the refreshment of memory.' 1 Greenleaf on Ev., (16th Ed.), section 439c."

In this case of Hileman, there was no basis whatever to use the deposition of Hazel Burns for the purpose of refreshing her recollection. The witness never admitted to any failure of memory and therefore there was no occasion to use her prior deposition as a means of refreshing an errant memory. Consider the following quote from the direct examination of witness Hazel Burns:

"*Q.* Now, about how many people were in the Bar that evening when you got there?

"*A.* Well, I have tried to visualize over and over. There are only a half-dozen that I can recall faces and names besides Gordie and myself and the two people behind the Bar.

"*Q.* Those are the ones that you can remember by faces and names, but besides that, about how many more people were there?

"*A.* Seated at the Bar?

"*Q.* No, in the Bar, in the Bar altogether.

"*A.* I'd say there were ten, approximately ten people, maybe a couple more, maybe a couple less, including the two people behind the Bar and Gordie and myself.

"*Q.* As many as fifteen or twenty possibly?

"*A.* No, there were more like eight, ten or twelve. Twelve at the very most. Ten or twelve.

"*Q.* Do you recall being asked this same question back on October 28 in my office?

"*A.* Yes, sir, I do.

"*Q.* Do you remember how many people you thought were in the Bar that day?

"*A.* I believe I stated about the same amount, ten or twelve people.

"*Q.* Could you have said fifteen?

"*A.* It's possible but like I say, it's more like ten or twelve people. People come and go in the course of a couple of hours you know. I wasn't sitting there waiting to see who came and went."

In the quoted testimony, the examining attorney without objection suggested to the witness that she had previously stated there were 15 people in the bar. In spite of this suggestion, she continued to insist that only 10 or 12 people were in the bar. Certainly, it could not be said that her memory was refreshed. There is a still more important question here. Even if we were to say, contrary to the previous authority in Michigan, that a party to a civil action may impeach his own witness, and applied thereto the *Lightfoot* rules with respect to impeachment, there still would be no occasion for the jury to conclude that the version given by the witness in the prior statement constituted the truth. Evidence

of a prior inconsistent statement, when admissible
for the proposition of impeaching the credibility of
a witness, does not constitute substantive evidence
of the matters contained in the prior statement.
Evidence of a prior inconsistent statement, when
received to impeach the credibility of a witness, is
admissible and not hearsay, because it is received
for the purpose of proving that the prior statement
was made and not for the purpose of proving the
truth of the prior statement.

It is clear from the examination of Hazel Burns
that counsel was not only attempting to impeach the
witness under the guise of refreshing her recollec-
tion, he was moreover attempting to place before
the jury as substantive evidence, the statements con-
tained in her prior deposition. Note the following:

"*Q.* Do you recall this question: 'Any idea how
many he drank' and an interjection by Mr. Baun—
'How many what', '*Q.* Of these drinks that he drank?
*A.* I can't say how many in the course of two-and-a-
half hours. He had several. *Q.* Now— *A.* He was
drinking all the time we were there. I do know that.
As far as counting how many, I couldn't tell.' Was
that question asked to you and did you make that
answer?

"*A.* Yes, it was and I remember answering you.

"*Q. So he was drinking all the time you were
there.*" (Emphasis added.)

The examiner, after reading the question and an-
swer from the deposition, elicits from the witness a
statement that she recalled the questions and an-
swers. Without any further questioning, the lawyer
then concludes that he has proven the truth of the
matter contained in the deposition. The lawyer
says, "so he was drinking all the time you were
there." Under no possible theory, could it be said
that there was at this juncture any evidence prop-

erly before the jury from which the jury could conclude that "he was drinking all the time you were there." Even if the Burns' deposition were admissible to impeach the credibility of the witness Burns, the only thing that could be said at this juncture was that the jury had been shown that Mrs. Burns once said that "he was drinking all the time we were there."

In summary, then, I would hold (1) that a party in a civil action may not impeach his own witness, even if that witness appears hostile or changes his testimony; (2) that unless a witness needs to have his memory refreshed, there is no occasion to show him his former testimony; (3) that a witness who needs to have his memory refreshed may be shown his former testimony, or it may be read to him out of the presence of the jury.

Finally, I would hold that it was not error in this case for the court to sustain the objection of the defendant to the use of the deposition of witness Burns by way of reading it in the presence of the jury.

I would affirm.

T. G. KAVANAGH, J., concurred with T. E. BRENNAN, J.